**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RALPH WILLIAM BARDELL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 23-148-WCB |
| | § | |
| BANYAN DELAWARE, LLC and | § | |
| BANYAN TREATMENT CENTER, LLC | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ralph William Bardell brought this action against Banyan Delaware, LLC ("Banyan Delaware") and Banyan Treatment Center, LLC ("Banyan"), alleging two counts of violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. The first count alleged that the defendants subjected Mr. Bardell to disparate treatment based on his disability, which consisted of addiction. The second count alleged that the defendants violated a duty of confidentiality with respect to Mr. Bardell's addiction disability when employees of the defendants told other employees of the defendants that Mr. Bardell had relapsed.

The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 17. For the reasons set forth below, the defendants' motion is GRANTED IN PART and DENIED IN PART.

### I. Background

Because the defendants have sought to have the claims dismissed for failure to state a claim upon which relief can be granted, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from those allegations after construing

1

them in the light most favorable to the plaintiff. *Foglia v. Renal Ventures Mgmt.,* LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Accordingly, the facts set forth below are taken from in Mr. Bardell's complaint, Dkt. No. 1, Exh. A at 7–15.

Banyan operates addiction treatment centers across the United States. Banyan Delaware runs a treatment center owned and operated by Banyan. From approximately June 1, 2020, to December 16, 2021, Mr. Bardell was employed by Banyan Delaware. Complaint ¶ 5. During that period, Mr. Bardell was an addict in recovery. *Id.* ¶ 6. Banyan and Banyan Delaware "were in possession of Mr. Bardell's confidential health information, particularly with respect to his addiction and sobriety." *Id.* ¶ 34.

In March 2021, the national Banyan organization signed a contract with Highmark Medicaid regarding reimbursement rates for residential treatment and detoxification services. *Id.* ¶ 8. Later that year, Banyan announced a new policy of taking Highmark patients for one week of detoxification and one week of residential treatment. *Id.* ¶ 9. In December 2021, a Highmark patient at Banyan Delaware was discharged after two weeks of treatment. *Id.* ¶ 10. Mr. Bardell thought that decision was not in the patient's best interests. *Id.* ¶ 11. After discovering that the decision was made because of the low reimbursement rate that Highmark paid Banyan Delaware, Mr. Bardell drove to the Banyan Delaware treatment facility to discuss his concerns with Banyan Delaware's Executive Director Cara Tilbury. *Id.* ¶¶ 10-11. Because Ms. Tilbury was not in the office that day, Mr. Bardell met with several other employees and shared his views with them instead. *Id.* ¶¶ 11-13.

Mr. Bardell then sent text messages to several members of the national Banyan team regarding the same subject. *Id.* ¶ 14.  In response, Banyan's Co-Vice President of Business Development, Josh Gamaitoni, called Mr. Bardell to discuss the issue Mr. Bardell had raised.  *Id.*

On December 10, 2021, Mr. Gamaitoni traveled to Delaware to meet with Mr. Bardell and Angela Lloyd, the Admissions Supervisor for Banyan Delaware. *Id.* ¶ 15.  During that meeting, Mr. Gamaitoni and Ms. Lloyd expressed concern for Mr. Bardell's mental health and well-being. *Id.*  Mr. Gamaitoni told Mr. Bardell that "the executive team in Florida had approved Mr. Bardell to fly to the corporate headquarters . . . to discuss his concerns," but Mr. Gamaitoni tried to dissuade Mr. Bardell from going. *Id*. ¶ 16.  Mr. Bardell did not trust Mr. Gamaitoni to accurately present his views to the executive team at Banyan, so he booked a flight in order to attend the executive team meeting scheduled for December 14, 2021. *Id.* ¶ 18.

On the morning of December 14, 2021, Mr. Bardell received a call from a Banyan Delaware employee, Caitlin Amodei, who told him that she had heard rumors that Mr. Bardell had relapsed, gone crazy, and been fired. *Id.* ¶ 19.  Mr. Bardell then got a call from Corey Cortez, who worked for the national Banyan organization. *Id.* ¶ 20.  Mr. Cortez asked Mr. Bardell how he was doing.  Mr. Bardell responded that he was not doing well given the rumors of his relapse and termination, but that they could discuss those issues in person after his arrival at Banyan headquarters. *Id.*

When Mr. Bardell arrived at the headquarters facility later that morning, he was met with security personnel and was not allowed into the building. *Id.* ¶ 21.  Joe Bozza, the National Director of Human Relations, then met with Mr. Bardell in the parking lot in the presence of local law enforcement officers. *Id.* ¶ 22.  Mr. Bardell offered to provide a urine sample to prove that he had not relapsed, but Mr. Bozza declined the offer. *Id.*  During that encounter, Mr. Bozza told Mr.

Bardell that he was being suspended without pay. *Id.* ¶ 23.  Two days later, Mr. Bozza called Mr. Bardell to tell him he had been terminated. *Id.* ¶ 24.

Mr. Bardell subsequently filed this lawsuit.

## II. Discussion

The defendants argue that Mr. Bardell's complaint failed to state a claim on both the disparate treatment and confidentiality counts.  First, they argue that Mr. Bardell failed to plead that he was "regarded as" having a disability within the meaning of section 12102(3)(A) of the ADA, 42 U.S.C. § 12102(3)(A).  Second, they argue that even if Mr. Bardell adequately pleaded that he was "regarded as" having a disability, he did not plausibly allege that he was terminated because of his disability.  Third, they argue that Mr. Bardell did not adequately plead a violation of the ADA's confidentiality provision, 42 U.S.C. § 12112(d).  For the reasons set forth below, the defendants' motion is granted as to Count II (the confidentiality claim) but denied as to Count I (the disparate treatment claim).

### A.    Disability

The defendants argue that Mr. Bardell failed to plead that he was regarded as having a disability for two reasons.  First, they argue that the ADA does not treat a transitory and minor impairment as a qualifying disability for purposes of the statute, and they contend that Mr. Bardell did not plead that the defendants perceived his relapse as anything other than transitory and minor. Dkt. No. 17 at ¶ 18-20 (citing 42 U.S.C. § 12102(3)(B); 29 C.F.R. §§ 1630.2(g)(1)(iii), 1630.15(f)). Second, they argue that Mr. Bardell merely showed that the defendants believed that he had relapsed, which does not suggest that the defendants regarded Mr. Bardell as disabled. *Id*. at ¶ 20 (citing *Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996)).  The defendants contend that to plead that the defendants regarded him as disabled, Mr. Bardell was required to allege either that

the defendants erroneously believed that Mr. Bardell had an impairment that substantially limited one or more of his major life activities or that he had a non-limiting impairment that the defendants mistakenly believed substantially limited one or more of his major life activities. *Id*. at ¶ 18 (citing *Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. 2009)).

Mr. Bardell responds that he sufficiently pleaded both his addiction disability and his employers' knowledge of it, and that his employers "automatically assumed" that "his frustrations with company policy" were symptoms of relapse and mental instability because of his addiction. Dkt. No 19 at 6-7 ¶¶ 16-17. Moreover, Mr. Bardell argues that the defendants improperly relied on superseded caselaw that does not reflect the 2008 amendments to the ADA that changed the standard for determining when a particular condition is "regarded as" a disability. Dkt. No. 19 at ¶ 18.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(1)(A)–(C). In a 1999 case, the Supreme Court interpreted the third prong of that definition to require a plaintiff show that either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). In 2008, Congress amended the ADA to clarify and broaden the scope of prong three—the "regarded as" provision—and explicitly rejected the Supreme Court's interpretation in *Sutton*. *See* Americans with Disabilities Act Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) ("ADAAA"). Following the amendments, the ADA provides that::

5

An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).

The defendants cite three cases in support of their characterization of what Mr. Bardell was required to plead in order to show that the was regarded as having a disability. But those cases all apply pre-2008 law, and none of them address the amended statutory language. First, the defendants cite *Eshelman*, which relied on the interpretation of "regarded as" in *Sutton v. United Air Lines, Inc.*, that Congress rejected in the amendments. ADAAA, Pub. L. No. 110-325, § 2(b)(3), 122 Stat. 3553, 3554 (2008). Second, the defendants cite *Kelly* for the proposition that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." 94 F.3d at 109. As Mr. Bardell points out in his brief, that decision was effectively superseded by the ADAAA. *See Wilders v. Quikrete Companies, Inc.*, 2019 WL 1128629 at *3–*4 (W.D. Pa. Mar. 12, 2019). Finally, the defendants cite *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002), and the pre-2012 version of the pertinent regulations to support their argument that Mr. Bardell's allegations fall short of showing that he was "regarded as" having a disability. But *Rinehimer* was decided before the 2008 amendments to the statute, and the regulations cited by the defendants are not the updated regulations promulgated in 2012 after the ADAAA was enacted.[1]

---

[1] The current version of the applicable regulation, 29 C.F.R. § 1630.2(l), does not include any of the language that the defendants quote from the regulation. It appears that the defendants quotation at page 7, paragraph 17, of their motion to dismiss is quoting the pre-amendment version of the regulation. *See* 29 C.F.R. § 1630.2(l) (1996).

Under current law, "the test is whether the employer 'perceived' [the employee] as impaired, 'whether or not the [perceived] impairment limits or is perceived to limit a major life activity.'"  *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (quoting 42 U.S.C. § 12102(3)(A)). Mr. Bardell alleged that his employers knew about his addiction and perceived him to be going through a mental health crisis or relapse that was affecting his work.  Complaint ¶¶ 15, 19, 34.  Addiction is considered a disabling impairment. *See Lamberson v. Pennsylvania*, 561 F. App'x 201, 26 (3d Cir. 2014) ("Drug addiction is included within the meaning of disability under [the ADA] where the impairment is not due to the 'current illegal use of drugs.'"). Accordingly, contrary to the defendants' contention, Mr. Bardell was not required to plead that his employers perceived his addiction to limit one or more of his major life activities.

With respect to the defendants' second argument, regarding whether Mr. Bardell has adequately pleaded that the defendants believed his impairment was more than a minor and transitory impairment, the defendants argue that Mr. Bardell has not alleged that the defendants saw his relapse as anything other than "transitory and minor."  But the ADA provides that the "impairment" in question must not be merely transitory and minor, and it defines a transitory impairment as an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).  The "impairment" in this case is not Mr. Bardell's relapse, but his addiction.  And he has pleaded that he has had an addiction disability for more than a decade and that his employers were aware of it.  Complaint ¶¶ 6, 34.  As such Accordingly, Mr. Bardell has plausibly alleged that his employers regarded him as disabled.

### B.    Adverse Employment Action

The defendants also argue that Mr. Bardell's complaint does not give rise to "a plausible inference that he was terminated for any alleged relapse" rather than for his erratic behavior at

work.  Dkt. No. 17 at 8-9 ¶¶ 21, 23.  In support of that contention, the defendants cite four allegations in Mr. Bardell's complaint: (1) Mr. Bardell showed up unannounced at the Delaware facility and accosted employees; (2) he booked a flight to Florida to accost Banyan's executives; (3) he told an executive that he was "not well" and announced that he would arrive at the headquarters in 45 minutes; and (4) he attempted to provide Mr. Bozza with a urine sample.  *Id.* at 9 ¶ 24.

Mr. Bardell responds that he met the plausibility standard required to allege the elements of an ADA violation because he alleged that (1) his employers perceived him as being disabled; (2) he was qualified for his job, and (3) his allegations indicated temporal causation.  Dkt. No. 19 at 8 ¶¶ 20-21.

The defendants take the allegations from Mr. Bardell's complaint out of context.  Mr. Bardell alleged that he drove to the Milford facility to meet with Ms. Tilbury, but when he found out that Ms. Tilbury was out he requested a meeting with the leadership team in Delaware. Complaint ¶ 11.  The leadership team at that facility was able to accommodate that request on the same day.  *Id.* ¶¶ 11-12.  Mr. Bardell further alleged that he was authorized to fly to the Banyan headquarters in Florida for a meeting, which he did.  *Id.* ¶¶ 16, 18.  He alleged that on the morning he flew to Florida he was told that rumors were circulating that he had relapsed and had been fired. *Id.* ¶ 19.  After that, a company executive asked him how he was doing, and Mr. Bardell responded that he was not doing well because of the rumors about his condition, but that he could discuss those issues when he arrived at the company headquarters in about 45 minutes.  *Id.* ¶ 20.  He also alleged that he offered to provide a urine sample to show that he had not relapsed.  *Id.* ¶ 22. Accepting all those facts as true, Mr. Bardell has made a sufficient showing that he was terminated

because the defendants believed he had relapsed, and thus regarded him as disabled.  That claim is therefore not subject to dismissal for failure to state a claim upon which relief can be granted.

### C.    Confidentiality

The defendants also seek to dismiss Mr. Bardell's second count, which alleges a violation of the ADA's confidentiality provisions.  Section 12112(d) of the ADA broadly prohibits covered entities from conducting medical examinations or making disability-related inquiries of job applicants and employees, subject to the exceptions set forth in paragraphs (d)(3) (job applicants) and (d)(4)(A) (employees) of section 12112 of the ADA.  Information gathered through permitted medical examinations and inquiries must be treated as confidential medical records, subject to narrow exceptions.  *See* 42 U.S.C. §§ 12112(d)(3)(B), (d)(4)(C).  Accordingly, to state a claim for a violation of the ADA's confidentiality provisions, Mr. Bardell was required to allege that Banyan obtained his medical information through an employment-related medical examination or inquiry, that Banyan disclosed that information, and that Mr. Bardell suffered an injury as a result of the disclosure.  *See Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 788-89 (N.D. Ind. 2014); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 711 (E.D. La. 2013).

The defendants argue that Mr. Bardell failed to plead a violation of the ADA's confidentiality provisions because Mr. Bardell did not allege (1) a medical examination or inquiry and (2) that information learned during such an inquiry was disclosed.  Dkt. No. 17 at ¶ 27.  Mr. Bardell responds that the only logical inference from the complaint "would be that confidential medical records were discussed or otherwise disseminated, and ultimately prompted action against Bardell's employment status."  Dkt. No. 19 at ¶ 23.

The complaint alleges that the defendants were "in possession of Mr. Bardell's confidential health information, particularly with respect to his addiction and sobriety."  Complaint ¶ 34.  The

complaint further alleges that "employees of Banyan and/or Banyan Delaware began telling other employees of Banyan and/or Banyan Delaware that Mr. Bardell had relapsed." *Id.* ¶ 35. Those allegations are insufficient to state a claim under subsection 12112(d) of the ADA because they do not allege that the defendants obtained the relevant medical information through an employment-related medical examination or inquiry, as required by the statute. *See Taylor v. City of Shreveport*, 798 F.3d 276, 288 (5th Cir. 2015) ("to survive a Rule 12(b)(6) motion, the complaint must affirmatively allege that the defendant obtained the disclosed medical information pursuant to a medical examination or inquiry."); *Sheriff v. State Farm Ins. Co.*, 2013 WL 4084081 at *8-*9 (W.D. Pa. Aug. 13, 2013) (dismissing plaintiff's ADA claim because she did not allege that the defendant obtained information pursuant to a medical inquiry); *see also EEOC v. Thrivent Fin. for Lutherans*, 795 F. Supp. 2d 840 (E.D. Wis. 2011) ("courts have consistently held that the confidentiality requirements of [§ 12112(d)(4)] do not protect medical information that [was] not acquired as a result of a medical inquiry by the employer") (citing *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011); *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000)), *aff'd*, 700 F.3d 1044 (7th Cir. 2012).

Because Mr. Bardell has not alleged that Banyan and Banyan Delaware obtained confidential medical information through an employment-related medical examination or inquiry, Count II of his Complaint will be dismissed.

Mr. Bardell may seek leave to amend his Complaint under District of Delaware Local Rule 15.1, which he has stated he intends to do. As provided by Local Rule 15.1, Mr. Bardell may file a motion to amend his complaint and attach both the proposed amended complaint, complete with a handwritten or electronic signature, and a form of the amended pleading that indicates how it

differs from the pleading it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.

### III. Conclusion

In summary, Count II of Bardell's complaint will be dismissed. Count I states a plausible claim for relief and therefore will not be dismissed.

IT IS SO ORDERED.

SIGNED this 16th day of October, 2023.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE