IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RALPH WILLIAM BARDELL, | ) | |
|     Plaintiff, | ) | |
| v. | ) | C.A. No. _____ |
| BANYAN DELAWARE, LLC, a Delaware limited liability company, BANYAN TREATMENT CENTER, LLC, a Florida limited liability company, and | ) ) ) ) | JURY TRIAL DEMANDED |
| JOSH GAMAITONI, in his individual and official capacities | ) ) | |
|     Defendants. | ) | |

## AMENDED COMPLAINT

### Parties & Background

1. Plaintiff Ralph William Bardell ("Bardell") is a resident of Wilmington, New Castle County, Delaware.

2. Defendant Banyan Delaware, LLC ("Banyan Delaware"), is a Delaware limited liability company that operates an addiction treatment center at 21 West Clarke Avenue, Suite 4001, Milford, Sussex County, Delaware 19963. The telephone number is (302) 291-1821. Banyan Delaware opened the facility in Milford in September 2020. Upon information and belief, Banyan Delaware employs 80 people.

3. Banyan Delaware is part of Defendant Banyan Treatment Center, LLC ("Banyan"), upon information and belief a Florida limited liability company, which operates addiction

1

treatment centers nationwide. The corporate headquarters is located at 950 North Federal Highway, Suite 115, Pompano Beach, Florida 33062. The telephone number is (954) 945-7520. Upon information and belief, Banyan Treatment Centers employs more than 500 people nationwide. The national Banyan organization is heavily involved in directing the day-to-day operations of Banyan Delaware and should also be treated as Bardell's employer.

4. Banyan DE is one of approximately twenty different locations owned and operated by Banyan. Banyan is heavily involved in day-to-day operation of Banyan DE.

5. Josh Gamaitoni is the Co-Director of Business Development for Banyan.

6. From approximately June 1, 2020, until approximately December 16, 2021, Bardell worked for Banyan Delaware. He started as a community outreach representative. He became the Director of Business Development for Delaware in May 2021.

7. Bardell has been, at all relevant times, an addict in recovery. Bardell was sober for 11 years prior to a 3-month relapse in 2018. He has been sober again since early 2019. Addiction is a disability under the Americans with Disabilities Act.

8. On September 26, 2022, Bardell filed a Charge of Discrimination against both Defendants with the United States Equal Employment Opportunity Commission ("EEOC") with a request that the Charge of Discrimination be dual-filed with the Delaware Department of Labor Office of Anti-Discrimination. The Charge Number assigned to Bardell's Charge by the EEOC was 530-2023-00023. By letter dated October 5, 2023, the EEOC determined it would not

further proceed investigating Bardell's Charge and issued a Right to Sue Letter giving Bardell 90 days to file a lawsuit against Defendants.

### Banyan's Contract with Highmark Medicaid and Concerns About Patient Care

9. At some point in or about March 5, 2021, Erin Kennedy, the CFO of the national Banyan organization, "accidentally" signed a contract with Highmark Medicaid which affected patients in Delaware. The agreement was not as financially favorable to Banyan Delaware for residential treatment as for detox.

10. In October 2021, Josh Gamaitoni, a Co-Vice President of Business Development for the national Banyan organization, said Banyan would only take Highmark patients for two weeks: one week of detox and one week of residential treatment. This was shorter than most rehabilitation services, which typically provide at least three weeks of residential treatment following detox. Gamaitoni instructed Banyan Delaware to transfer patients elsewhere after one week of detox and one week of residential treatment. Bardell raised his concern that this was not in patients' best interests, and Gamaitoni said, "It'll be fine, buddy."

11. In December 2021, a Banyan Delaware patient who had insurance through Highmark Medicaid was told she was being discharged prematurely after two weeks of residential treatment. The purported reason was that Banyan's Utilization Review process had determinedthat Highmark Medicaid would only approve one week of detox and one week of residential treatment. This was a false statement. Bardell subsequently saw a screen shot from Salesforce, a computer program used by Banyan, on which Troy, a member of Banyan's

Utilization Review team, said the Highmark contract was one Banyan did not like because of its reimbursement rates.

12. Concerned for the safety of the patient, Bardell decided to take action. Bardell was particularly sensitive to patient safety issues since he had previously experienced a preventable patient death earlier in his career at Banyan DE._Bardell knew overdoses could be especially likely and deadly in those who relapse after having detoxed, and this risk weighed heavily on him, prompting Bardell to act assertively and proactively toward Banyan and Banyan Delaware.

13. On December 8, 2021, Bardell drove to Banyan Delaware's facility in Milford, Delaware. He tried to have a discussion with Cara Tilbury, the Executive Director of Banyan Delaware, but Tilbury was off from work that day. Bardell instead approached Clinical Director Tina Moyer and Director of Operation Andrew Schmidt and requested a meeting with the leadership team. They stated they were dealing with a patient issue, but Schmidt came by a few minutes later and suggested they speak in his office with Tech Supervisor Darren Collins.

14. Bardell told them about the patient with Highmark, and both Schmidt and Collins acted disgusted. They denied knowledge of what was going on. They repeatedly asked what the executive team in Florida was doing. Bardell advised them to report it up the chain of command and speak to someone in case management. Bardell also told Schmidt and Collins, who were members of the Banyan Delaware leadership team, that if they did not take action, he (Bardell) was going to report it. Bardell indicated he would probably lose his job over this.

15. Bardell next went to the case management team and delivered the same message he delivered to Schmidt and Collins.

16. Bardell sent a text message to Gamaitoni, Melissa Townes, the National Director of Mobile Assessment for Banyan, and Angela Lloyd, Admissions Supervisor for Banyan Delaware, saying that would not participate in harmful practices. Approximately 30 minutes later, Gamaitoni contacted Bardell by FaceTime to ask what was going on. Bardell explained, and Gamaitoni said he did not know what was going on and was not ok with it. Bardell reminded Gamaitoni that this had been Gamaitoni's idea. Bardell told Gamaitoni that he would report this situation if Banyan Delaware actually discharged the patient after two weeks.

17. Gamaitoni came to Delaware on December 10, 2021, to talk to Bardell. The two met with Angela Lloyd at Banyan DE's Mobile Assessment Unit in Wilmington, DE. When Bardell tried to bring up Banyan's practices, Gamaitoni kept asking Bardell if he was ok. Bardell shared with Gamaitoni and Lloyd (separately) that he was having some struggles in his personal life with his children and a family pet. Bardell attempted to redirect the conversation to Banyan's practices. Gamaitoni attempted to redirect the conversation to Bardell's mental health/well-being. Lloyd, who had been a friend of Bardell, then chimed in that she was also worried about Bardell's well-being.

18. During this meeting, Gamaitoni told Bardell that the executive team in Florida had approved Bardell to fly to the corporate headquarters in Florida to discuss his concerns. When Bardell told Gamaitoni that he would do that, Gamaitoni tried to dissuade Bardell. But Bardell said he would be at the meeting the following Tuesday (December 14, 2021).

5

19. At the end of the meeting on December 10, 2021, Gamaitoni told Bardell to take some time off. Bardell refused to be suspended, but Gamaitoni said it was just some paid time off. Gamaitoni said he did not want Bardell going to Florida the following week and that he (Gamaitoni) would handle it.

## Bardell Goes to Banyan's Florida Headquarters to Raise His Concerns

20. Bardell did not trust Gamaitoni to accurately report Bardell's concerns to Banyan's executive team, so Bardell booked a flight to Florida for the executive team's meeting on December 14, 2021.

21. On the morning of Tuesday, December 14, 2021, as he traveled to Banyan national headquarters in Florida, Bardell received a call from Caitlin Amodei who was the Delaware Case Management Supervisor. She indicated she was off on the prior Friday. She said the rumors were circulating that Bardell had been fired, had relapsed, and had gone crazy. To Bardell's knowledge, this information was spread by (at least) Gamaitoni, Moyer, and Collins.

22. A few minutes later, Bardell got a call from Corey Cortez, Co-Vice President of Business Development for the national Banyan organization. Cortez asked Bardell how he was, and Bardell said not well since rumors were circulating about his termination and relapse. He told Cortez that he was approximately 45 minutes away from the headquarters' office in Florida and that the issues could be discussed in person.

23. When Bardell arrived at the headquarters' office, he was denied entry by security. Bardell asked security to let Cortez or Joe Bozza, National Director of Human Relations, know

he was there. Bozza texted Bardell, and they arranged to meet in the parking lot.

24. When Bozza came out to the parking lot, local law enforcement arrived. Bozza said the Bardell had threatened Cortez by phone, and Bardell denied that allegation. Bardell spoke with law enforcement, told them why he was there, and tried to show law enforcement some notes that outlined his concerns that he was raising to Banyan's executive team. Bozza told Bardell not to share his concerns with law enforcement. Bardell offered to go to lunch with Bozza in a public place, but Bozza declined. Bardell also offered to give a urine sample since Gamaitoni told the Banyan Delaware staff that Bardell relapsed. Bozza declined.

### Bardell is Suspended Without Pay & Then Terminated

25. After discussing the matter in the parking lot on December 14, 2021, Bozza told Bardell that he was suspended without pay and that Bardell needed to turn over his Banyan laptop and computer. Bardell indicated he understood, and Bozza asked for Bardell's cell phone. Bardell said the one he had with him was his personal cell, and he would not be turning it over.

26. Two days later, on December 16, 2021, Bozza called Bardell to tell Bardell he was terminated. Approximately two hours after Bardell was terminated, Amodei called Bardell to say Bozza had called her and fired her "for communicating with Bill Bardell."

27. Bardell believes that any written documentation concerning his complaints or concerns (or the underlying facts) have been deleted, destroyed, etc., as that was a common practice by Banyan.

28. As a result of the termination and having false information spread about him, Bardell suffered the following damages:

   a. Lost wages, front and back;

   b. Medical expenses from treatment for the emotional distress he suffered;

   c. Emotional distress, including, but not limited to, post-traumatic stress disorder and anxiety;

   d. Humiliation and embarrassment at work and in the community;

   e. Disruption to his life; and

   f. Emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT I – DISPARATE TREATMENT
### (Against Banyan and Banyan Delaware)

29. Plaintiff incorporates all of the following allegations into this Count as if they were specifically stated herein.

30. Bardell is a member of a protected class as he suffers from a disability, addiction, which substantially limits one or more major life activities. Bardell has to be constantly vigilant so as not to relapse again as he did in 2018.

31. Bardell was highly qualified for his job with Banyan as he has worked in the recovery field for many years.

32. Based upon the comments reported to Bardell by Amodei on or about December 14, 2021, someone at Banyan believed that Bardell had relapsed, which directly led to his

termination.

33. As a result of the disparate treatment, Bardell suffered the damages identified in Paragraph 26.

34. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 12101, *et seq.*

## COUNT II – DEFAMATION
### (Against All Defendants)

35. Plaintiff incorporates all of the foregoing allegations into this Count as if they were specifically stated herein.

36. Plaintiff Bardell asserts all Defendants are liable for defamation. To successful plead a claim of defamation in Delaware, "the plaintiff must plead: (1) a defamatory communication; (2) publication; (3) reference to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) Injury." *Cooper v. Cadia Pike Creek*, 2021 Del. Super. LEXIS 105 at ¶9.

37. In December 2021, employees of Banyan and/or Banyan Delaware, including at least Josh Gamaitoni, Tina Moyer, and Darren Collins, began telling other employees of Banyan and/or Banyan Delaware that Bardell had relapsed, was fired, and had gone crazy. Plaintiff contends he was first alerted to the defamation when Banyan DE Case Management Supervisor Caitlin Amodei called Bardell on Tuesday, December 14, 2021 to say rumors were circulating at Banyan DE that Bardell had been fired, had relapsed, and had gone crazy.

9

38. This communication was false because Mr. Bardell had not relapsed, had not yet been terminated, and was not having a mental health crisis; rather, he was voicing his frustration and alarm to superiors over their lack of care for Banyan clients.

39. Bardell asserts publication occurred at least by slander, if not also by libel, by at least Josh Gamaitoni, Tina Moyer, and Darren Collins, during the time period after Gamaitoni and Angela Lloyd met with Bardell on Friday, December 10, 2021 at Banyan's Mobile Assessment Unit in Wilmington, DE, and at least until Caitlyn Amodei's phone call to Bardell on the morning of Tuesday, December 14, 2021 as Bardell was on his way to Banyan headquarters in Florida. The defamation continued through at least spoken re-publication of the falsehood by other Banyan DE and Banyan employees so that it eventually reached Amodei.

40. Amodei clearly understood that the rumors were referring to Bardell because she called Bardell directly to alert him to what she had heard circulating at Banyan.

41. Amodei also understood the defamatory meaning of the communication because she felt the need to bring it to Bardell's attention as soon as possible, urgently calling even though she knew Bardell was traveling.

42. The injury to Bardell presents on emotional, physical, financial, and personal levels. Bardell suffered injury to his reputation as a direct result of this communication, which he argues is defamatory *per se*. Addiction carries a stigma in society, and Defendants portraying Bardell as an active addict clearly disparages his character. Stating Bardell had "gone crazy" also impacts public perception of his character by making him appear unstable and unfit for normal society. Bardell has suffered severe emotional distress as a result of the defamation,

including panic attacks and severe anxiety, affecting his ability to obtain and hold meaningful employment, and impacting his relationships with his family, including his children.

43. As a result of this defamation, Bardell suffered injuries including:

   a. Loss of prospective job opportunities through damage to professional reputation, and inability to obtain and hold meaningful employment via destruction of his credibility within the recovery industry due to the accusation of relapse;

   b. Medical expenses from treatment for the emotional distress he suffered;

   c. Emotional distress, including, but not limited to, post-traumatic stress disorder and anxiety;

   d. Humiliation and embarrassment at work and in the community;

   e. Disruption to his life; and

   f. Emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

44. It is likely that more will be revealed through discovery, particularly regarding republication and the path of transmission of the defamatory communications.

45. WHEREFORE Plaintiff Ralph William Bardell respectfully requires this Court:

   A. Enter judgment in his favor;

   B. Enter judgment jointly and severally against Defendants Banyan Delaware, LLC., Banyan Treatment Centers, LLC, and Josh Gamaitoni in his personal and official capacities;

   C. Award him special damages as he can prove;

  D.  Award him compensatory damages as he can prove;

  E.  Award him attorney's fees and costs;

  F.  Award him pre- and post-judgment interest; and

  G.  Grant such other relief as the Court deems proper.

## COUNT III – CONCERTED ACTION: CIVIL AIDING AND ABETTING

### (Against Josh Gamaitoni, in his Individual and Official Capacities)

46. The Restatement 2d of Torts §876 describes liability for persons acting in concert:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

47. Relevant to this case are §876(b) and §876(c), which describe civil aiding and abetting. Josh Gamaitoni aided and abetted Banyan Delaware and Banyan in the disparate treatment of Bardell in reaction to Bardell's attempts to communicate his frustration with company policy, resulting in Bardell's wrongful termination and disparagement of character.

48. Gamaitoni, as a superior to Bardell, owed Bardell a duty of care with his confidential medical information contained in Bardell's personnel file regarding his past struggles with addiction. In spreading rumors among Banyan employees that Bardell had relapsed and gone crazy, Gamaitoni breached this duty of care as he should have known that

personnel files are not public information. Gamaitoni was at least negligent with the information he knew about Bardell's past, injuring Bardell's personal and professional reputation.

49.     Gamaitoni also owed Bardell a duty of care given Bardell's disability. Rather than taking Bardell's concerns about patient safefty seriously, Gamaitoni blamed Bardell's assertive behavior on a perceived relapse and mental health crisis without taking the time to verify the veracity of his assumption.

50.     This information was clearly transmitted by Gamaitoni up the chain of command to at least the Human Resources Director Joe Bozza, and Co-director of Business Development Cory Cortez, and is further evidenced by the national Banyan organization denying Bardell entry on the Florida campus after approving his travel there for a meeting, and instead arranging for law enforcement to meet Bardell.

51.     Gamaitoni was acting in concert with the Banyan organization leadership leading up to Bardell's termination due to his disability. Bardell was not afforded the protections required by the ADA and Delaware state law 19 Del. C. §724, and Gamaitoni was a key player in Banyan's actions that deprived Bardell of his employment rights.

52.     Gamaitoni disregarded Bardell's right to have a reputation free from defamation. In proliferating untruths about Bardell's mental health status and perceived relapse, Gamaitoni was at least recklessly disregarding the truth of Bardell's current disability. Gamaitoni knowingly did not provide Bardell with an opportunity to prove he had not relapsed as Gamaitoni spread this rumor entirely behind Bardell's back, and the superiors at Banyan's national headquarters refused Bardell's offer to provide a urine test to clear his name.

53.     By the very nature of the situation, Gamaitoni knew he did not have proof to support his allegations of relapse, and as a director, should have known his responsibilities for non-discrimination against those with disabilities.

54.     Further, there was no discussion of potential reasonable accommodations between Bardell and Banyan human resources despite their perception of Bardell's disability, proliferated by Gamaitoni, prior to Bardell's termination.

55.     Clearly, Gamaitoni's conduct breached several duties of care he owed Bardell in parallel to the Banyan company's disparate treatment. As part of Banyan leadership, Gamaitoni knew or should have known his responsibilities in providing a workplace free from discrimination.

56.     Although Gamaitoni himself was not the individual who terminated Bardell's employment, his tortious actions were instrumental in proliferating mistruths about Bardell's disability up the chain of command at Banyan (including employees such as Tina Moyer who were not in any position of authority over Bardell), that directly led to Bardell's improper termination.

57.     As a result, Bardell has suffered personal and financial damages, including, but not limited to, those described above in Paragraph 28.

58.     WHEREFORE Plaintiff Ralph William Bardell respectfully requires this Court:

H.  Enter judgment in his favor;

I.  Enter judgment jointly and severally against Defendants Banyan Delaware, LLC, Banyan Treatment Centers, LLC, and Josh Gamaitoni in his personal and official capacities;

J. Award him special damages as he can prove;

K. Award him compensatory damages as he can prove;

L. Award him attorney's fees and costs;

M. Award him pre- and post-judgment interest; and

N. Grant such other relief as the Court deems proper.

AMENDED: November 17, 2023

_____

Ralph (Bill) William Bardell, Plaintiff *pro se*

212 Potomac Road
Wilmington, DE 19803

bbardell22@aol.com