**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RALPH WILLIAM BARDELL, §<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>BANYAN DELAWARE, LLC, §<br>BANYAN TREATMENT CENTER, §<br>LLC, and JOSH GAMAITONI §<br>§<br>*Defendants.* §<br>§ | Civil Action No. 1:23-cv-00148-WCB<br>**FILED UNDER SEAL** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Ralph William Bardell initially brought this action against his former employers, Banyan

Delaware, LLC ("Banyan Delaware") and Banyan Treatment Center, LLC ("Banyan"). Dkt. No.

1. He subsequently added as a defendant his former supervisor, Josh Gamaitoni. Dkt. No. 28. In

his amended complaint, Mr. Bardell has asserted claims of disparate treatment under the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and defamation.[1] *Id.*

The defendants now seek summary judgment on both claims. Dkt. No. 58. The defendants

filed an opening brief in support of the motion. Dkt. No. 59. Mr. Bardell filed a responsive brief

opposing the motion. Dkt. No. 71. The defendants then filed a reply brief. Dkt. No. 82. For the

following reasons, the motion for summary judgment is GRANTED IN PART and DENIED IN

PART.

---

[1] Mr. Bardell pleaded additional claims in his complaint, Dkt. No. 1, and amended complaint, Dkt. No. 28, but those counts have since been dismissed, Dkt. Nos. 21 & 45. The procedural history of this case is laid out in detail in my opinion on the defendants' second motion to dismiss. *See* Dkt. No. 45.

I.    **Background**

Banyan is a national organization that operates addiction treatment centers in seventeen states.  Banyan Delaware operates Banyan treatment centers in the State of Delaware.  Mr. Bardell was employed at Banyan Delaware from June 2020 through December 16, 2021.  During that period, Mr. Bardell maintains, he was an addict in recovery.  Dkt. No. 72 ¶ 4.  During his employment with Banyan, Mr. Bardell had a medical marijuana card that was prescribed for his anxiety.  *Id.*  He considers medical marijuana use not to compromise his sobriety because his addiction issues involved alcohol and cocaine.  Dkt. No. 71 at 14–15.[2]

At all times relevant to the present case, Josh Gamaitoni was employed by Banyan as the Vice President of Business Development.  Dkt. No. 59 Exh. 1 ¶ 3.  Mr. Gamaitoni was Mr. Bardell's direct supervisor.  Dkt. No. 72 ¶ 3.

During Mr. Bardell's employment at Banyan Delaware, he developed several concerns about the safety of patients at the company's treatment centers.[3]  One such concern led to the events preceding Mr. Bardell's suspension and termination, the adverse actions that are at the heart of his ADA claim.  As of the fall of 2021, Mr. Bardell believed that Banyan was prematurely discharging patients whose Medicaid benefits were administered by Highmark Health Options ("Highmark"), based on financial incentives.  Mr. Bardell believed that Highmark paid relatively low reimbursement rates to Banyan and, as a result, Banyan was discharging Highmark patients earlier than was appropriate for a rehabilitation or recovery program.  *See* Dkt. No. 28 ¶¶ 9–11; Dkt. No. 72 ¶¶ 13–21.

---

[2] The defendants are somewhat coy about whether they dispute that Mr. Bardell experienced a relapse as a fact or merely consider the use of medical marijuana to be relevant to whether the defamation claim is substantially true or unverifiable.  *See* Dkt. No. 59 at 10–11.  At this stage, however, that issue is irrelevant because neither party disputes that Mr. Bardell was using medical marijuana prior to the relevant events.

[3] Whether there were in fact patient safety issues is not relevant to this litigation.

On December 7, 2021, Mr. Bardell became aware of a specific patient who he believed was being discharged prematurely. Dkt. No. 59 Exh. 6 at 133:1–4. The following day, he drove to the Banyan Delaware treatment center in Milford, Delaware, to confront the clinical team about the discharge of the Highmark patient. *Id.* at 132:22–24; Dkt. No. 71 at 5. The defendants note that the Milford facility was not Mr. Bardell's usual work site, Dkt. No. 59 at 3, but Mr. Bardell represents that he regularly traveled to the Milford facility for work. Dkt. No. 72 at 2.

When Mr. Bardell arrived at the Milford site, he was told that the individuals he wanted to see were unavailable. Dkt. No. 59 Exh. 6 at 153:11–22. He ultimately brought up his concerns with two employees at the Milford site who were available, Andrew Schmidt and Darren Collins, during a meeting in Mr. Schmidt's office. *Id.* at 154:7–8; Dkt. No. 72 ¶ 26.[4] Mr. Bardell requested that Mr. Schmidt share Mr. Bardell's concerns about the Highmark contract with Banyan leadership. Dkt. No. 72 ¶ 27; Dkt. No. 59 Exh. 8. That evening Mr. Schmidt emailed Banyan leadership about the interaction, reporting that Mr. Bardell "got very upset." Mr. Schmidt related what Mr. Bardell had said regarding the early discharge of Highmark patients. He added that Mr. Bardell "want[ed] to make absolutely sure that I would be forwarding this to our executive team," and that the confrontation was "uncomfortable to say the least." Dkt. No. 59 Exh. 8.

After the events on December 8, 2021, Mr. Bardell called Angela Lloyd, another Banyan Delaware employee, and discussed what occurred at the Milford site. Dkt. No. 59 Exh. 10 ¶ 4. Ms. Lloyd then called Mr. Gamaitoni to report her opinion that Mr. Bardell's actions on December

---

[4] The attendees at that meeting report the tone of the meeting somewhat differently. Mr. Collins described Mr. Bardell as "angry, accusatory, belligerent, animated, and gesticulating wildly." Dkt. No. 59 Exh. 7 ¶ 7. Mr. Bardell states that he was "passionate" and used "curse words for emphasis," Dkt. No. 72 ¶ 27, but he disputes that he was angry with Mr. Schmidt and Mr. Collins, Dkt. No. 71 Exh. 2 at 3. In his email to leadership on that day, Mr. Schmidt reported that Mr. Bardell was very upset, but calmed down later in the meeting. Dkt. No. 59 Exh. 8.

8, 2021, had been "unusual, unnecessary, and concerning." *Id.* at ¶ 5. On December 10, 2021, Mr. Gamaitoni flew to Delaware to meet with Mr. Bardell and Ms. Lloyd. Dkt. No. 59 Exh. 1 ¶ 7. Mr. Bardell was surprised that Ms. Lloyd was at the December 10, 2021, meeting because she was not his supervisor. Dkt. No. 72 ¶ 31.

Mr. Gamaitoni states that he held the meeting to check on Mr. Bardell's wellbeing. *Id.* ¶ 8. Mr. Bardell perceived the discussion of his mental health at the meeting to mean that Mr. Gamaitoni was not taking Mr. Bardell's concerns about patient safety seriously. Dkt. No. 72 ¶ 31. Mr. Bardell and Mr. Gamaitoni disagree about whether, during the meeting, they discussed Mr. Bardell's plan to fly to the Banyan headquarters in Florida. Mr. Bardell represents that Mr. Gamaitoni told him that the Banyan leadership wanted to fly Mr. Bardell to the company's headquarters but that Mr. Gamaitoni tried to dissuade Mr. Bardell from going there. *Id.* ¶¶ 32, 36. Mr. Bardell asserts that he had previously been invited to leadership meetings in Florida and received positive feedback on his contributions to those meetings. *Id.* ¶ 37. Mr. Bardell subsequently purchased a ticket for a flight to Florida and a hotel room using a Banyan business credit card in order to attend a leadership meeting scheduled for that week. Mr. Bardell admits that no one on the executive team in Florida authorized that trip or knew about his plans. Dkt. No. 59 Exh. 6 at 244:5–245:24. Joe Bozza, the Vice President of Human Resources at Banyan, attested that employees who are not part of Banyan's corporate leadership are not permitted to attend corporate leadership meetings without an invitation, and that Mr. Bardell was not invited to the December 14, 2021, meeting. Dkt. No. 59 Exh. 2 ¶¶ 18–19.

After the meeting with Mr. Gamaitoni and Ms. Lloyd, Mr. Bardell wrote what he characterizes as "a summary of [his] complaints on the office white board;" put stickers with his contact information on various items in the Wilmington, Delaware, office; and left a ripped-up

card in the office.  Dkt. No. 59 Exh. 10, Exh. A.  The parties dispute additional details about the state of the office following Mr. Bardell's actions.  Ms. Lloyd described the office as "trashed"; she attested in an affidavit that the toilet was broken and that someone had urinated in the trash. Dkt. No. 59 Exh. 10 ¶ 10.  Mr. Bardell disputes those statements and maintains that the stickers and ripped up card were left in a joking fashion.  Dkt. No. 72 ¶ 34.

Mr. Bardell traveled to Florida on December 13, 2021, to attend a meeting at the Banyan headquarters the following day.  Dkt. No. 72 ¶ 41.  Prior to the meeting, Mr. Bardell posted photos related to the movie "Tombstone" that the defendants characterize as "thinly veiled threats."  Dkt. No. 59 at 5–6; Dkt. No. 59 Exh. 12.  Mr. Bardell states that Tombstone is one of his favorite movies and that he had frequently posted similar photos and identical quotes to Facebook in the past.  Dkt. No. 72 ¶ 39; Dkt. No. 72 Exhs. G & H.

During his trip to the company's Florida headquarters on December 14, 2021, Mr. Bardell received a call from Caitlin Amodei, who said that she heard rumors that Mr. Bardell had "relapsed or gone crazy."  Dkt. No. 59 Exh. 6 at 215:16–216:11.  At that time, Ms. Amodei was employed as a case manager at Banyan Delaware.  When Mr. Bardell arrived at the Banyan headquarters in Florida, he was not permitted to enter the building.  He ultimately spoke with Mr. Bozza in the parking lot in the presence of police officers.  *Id.* at 218:1–219:24; Dkt. No. 59 Exh. 2 ¶¶ 21–24. During that discussion, Mr. Bozza told Mr. Bardell that he was being suspended.  Dkt. No. 59 Exh. 2 ¶ 22.  Mr. Bardell was subsequently terminated.  *Id.* ¶¶ 29–30.

## II.    Legal Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On an issue as to which the nonmoving party bears the burden of proof at trial, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c) as of 1986). The burden on the nonmoving party in that situation can be satisfied by "showing," that is, by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party carries its burden, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

On an issue as to which the moving party bears the burden of proof at trial, the party seeking summary judgment must "establish the absence of a genuine factual issue." *Resol. Tr. Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). If the motion does not persuasively establish that no factual issue exists, summary judgment should be denied "even if no opposing evidentiary matter is presented." *Id.* Once the moving party with the burden of proof makes a showing that there is no genuine factual issue, that party is entitled to summary judgment "unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

## III. Discussion

### A. Defamation

In his amended complaint, Mr. Bardell alleged that employees of Banyan and Banyan Delaware, including Mr. Gamaitoni, Tina Moyer, and Mr. Collins, told other employees of Banyan

6

and/or Banyan Delaware that Mr. Bardell had "gone crazy" and had "relapsed." Dkt. No. 29 ¶ 37. Those statements form the basis of his defamation claim.

During discovery, the parties developed the facts related to these allegations. Mr. Gamaitoni provided an affidavit stating that during a discussion of whether Mr. Bardell should be terminated or suspended for his actions in December 2021, he told Banyan's leadership that Mr. Bardell's actions were consistent with a mental health episode or a relapse. Dkt. No. 59 Exh. 1 ¶ 10. As for Mr. Collins, it is not clear what, if anything, he said regarding Mr. Bardell, as Mr. Collins's declaration does not address the defamation allegation. See Dkt. No. 59 Exh. 7. As for Ms. Moyer, Mr. Bardell attests that Ms. Amodei told him that Ms. Moyer had told her during a case management meeting that Mr. Bardell had relapsed. Dkt. No. 59 Exh. 6 at 215:16–216:17, 217:21–24. In addition, Mr. Bardell submitted an affidavit from Teresa Anderson, who worked as a therapist at Banyan Delaware during that period in question. *See* Dkt. No. 72 Exh. 22. Ms. Anderson attested that Ms. Moyer told her that Mr. Bardell had relapsed. *Id.* ¶ 5.[5]

The defendants now seek summary judgment as to Mr. Bardell's defamation claim on two grounds. First, the defendants argue that any statement regarding whether Mr. Bardell had relapsed or had "gone crazy" is not actionable because any such statement is a statement of opinion that cannot independently be verified. Second, the defendants argue that the statements were privileged communications related to the qualifications or character of an employee.

---

[5] The defendants assert in their reply brief that Ms. Anderson attributed rumors of relapse to an unidentified individual who may or may not have been a Banyan employee. Dkt. No. 82 at 4. However, Ms. Anderson clearly attested that, after she had heard rumors that Mr. Bardell relapsed, Ms. Anderson spoke with Ms. Moyer and Ms. Moyer told Ms. Anderson that Mr. Bardell had relapsed. Dkt. No. 72 Exh. 22 ¶ 5.

### i. Whether the alleged defamatory statements were actionable statements of fact or protected statements of opinion

The defendants argue that under the four-part test articulated in *Riley v. Moyed*, 529 A.2d 248 (Del. 1987), any statement that Mr. Bardell had a mental health episode or relapsed is nonactionable. In *Riley*, the Delaware Supreme Court adopted the approach of the D.C. Circuit in *Olloman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984): "First, the Court should analyze the common usage or meaning of the challenged language. Second, the Court should determine whether the statement can be objectively verified as true or false. Third, the Court should consider the full context of the statement. Fourth, the Court should consider the broader social context into which the statement fits." *Riley*, 529 A.2d at 251–52 (Del. 1987) (cleaned up). The defendants focus on factors two and three.

First, the defendants argue that the alleged defamatory statements cannot be objectively verified. The defendants argue that it is undisputed (1) that Mr. Bardell was using marijuana prior to the events in December 2021, (2) that he showed up unannounced and angry at the Milford site, and (3) that he did in fact suffer a mental health episode related to these events. In light of those facts, the defendants contend, it is evident that any Banyan employee who relayed the statement that Mr. Bardell had gone crazy was expressing a fairly drawn opinion. Dkt. No. 59 at 10–11. The defendants argue that the same applies to any statement regarding Mr. Bardell's alleged relapse for two reasons: (1) Mr. Bardell was using medical marijuana and a prescription stimulant from which it could fairly be inferred that he had relapsed, and (2) it could not be objectively verified that Mr. Bardell had not either suffered a mental health episode or relapsed. *Id.* at 11.

Second, the defendants argue that the context of the statements requires finding that they were statements of opinion. The defendants argue that because any relevant statement of opinion was "accompanied by its underlying nondefamatory factual basis," Mr. Bardell's defamation

action premised on such an opinion must fail, "no matter how unjustified, unreasonable or derogatory the opinion might be." *Riley,* 529 A.2d at 254. They argue that Mr. Gamaitoni made his statement to the company's leaders, who understood the factual background of the statement, and that any statement Ms. Moyer made was to members of the Banyan Delaware case management team who had witnessed the relevant events and could determine the veracity of her opinion for themselves. Dkt. No. 59 at 11–12 (citing *See Cousins v. Goodier*, No. CV S20C-11-036, 2021 WL 3355471, at *7 (Del. Super. Ct. July 30, 2021), *aff'd*, 283 A.3d 1140 (Del. 2022)).

Mr. Bardell responds that the statements were not protected opinions, for two reasons. First, Mr. Bardell argues that the relevant statements cannot be viewed in the context of the surrounding factual circumstances, for several reasons: (1) the statements reached employees of other facilities, who would not have witnessed the relevant conduct or known the surrounding facts, and (2) Mr. Bardell's meeting with Mr. Collins and Mr. Schmidt and his interactions with the case management team at Milford happened behind closed doors such that no one outside of those meetings would know the surrounding facts. Second, Mr. Bardell argues that his sobriety and mental health were objectively verifiable via drug testing and a fitness-for-duty examination at the time Banyan took adverse employment actions against him. Dkt. No. 71 at 22.

Whether a statement is an actionable statement of purported fact or a protected expression of opinion is a question of law. *See Cousins*, 2021 WL 3355471, at *3. While the defendants urge this court apply the four-part test adopted in *Riley v. Moyed*, it is not evident that *Riley* is still good law. The Delaware Supreme Court has cautioned against applying *Riley*'s four-part test too rigidly in light of United States Supreme Court's decision in *Milkovich v. Loraine Journal Co.*, 497 U.S. 1 (1990), at least in cases involving a public figure or a matter of public concern. *See Cousins*, 283 A.3d at 1154–56 ("In addition to objective verifiability, which we view as the *sine qua non* of

defamation actions—at least where a public figure or matter of public concern is implicated—we acknowledge that it may be useful to consider the common usage, context, and social setting of a statement. But such consideration should be in service of the streamlined analysis articulated by *Milkovich*.").

The Delaware Supreme Court has embraced the Seventh Circuit's articulation of the *Milkovich* test: "If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at 1157–58 n. 99 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). While this is not a case involving a matter of public concern or a public figure, I focus my analysis on the objective verifiability of the relevant statements in light of the Delaware Supreme Court's reservations regarding the *Riley* test.

### 1. *Mr. Gamaitoni's Statements to Banyan Leadership and Third Parties*

Mr. Gamaitoni's statement to Banyan's leadership that Mr. Bardell's actions were consistent with someone having a mental health episode or having suffered a relapse is a statement of opinion accompanied by the surrounding facts. Mr. Gamaitoni's statement plainly expressed a subjective view or interpretation—that Mr. Bardell's actions at the Milford facility and his behavior during his meeting with Mr. Gamaitoni and Ms. Lloyd suggested that Mr. Bardell was experiencing a mental health episode or had relapsed—regarding events that the leadership team was aware of.[6] The record shows that Banyan's leaders were aware of the underlying facts regarding Mr. Bardell's visit to the Milford site. Mr. Gamaitoni attests that he made the statement

---

[6] While "[a] speaker may not insulate himself or herself from liability simply by phrasing defamatory statements as opinions where an imbedded defamatory fact may be inferred," *Ramunno v. Cawley*, 705 A.2d 1029, 1036 (Del. 1998), I do not need to address whether Mr. Gamaitoni's statement falls into that category because it is undisputed that the Banyan leadership team was aware of the "underlying nondefamatory factual basis" of Mr. Gamaitoni's statement. *Id.* at 1037.

in question at a meeting in which the parties discussed whether Mr. Bardell should be terminated based on his actions. Dkt. No. 59 Exh. 1 ¶ 10. The defendants also produced an email from Mr. Schmidt from December 8, 2021, to Banyan leadership describing the events at the Milford site. *See* Dkt. No. 59 Exh. 8. Mr. Bardell asserts that only Mr. Schmidt and Mr. Collins were privy to the discussion in Mr. Schmidt's office, but that assertion is insufficient to refute the evidence that the company leadership was aware of the events of that day.

Mr. Bardell argues that Mr. Gamaitoni made similar statements without the factual context to Kathy Greeley, another individual in Delaware's additcion rehabilitation and recovery community, who was not employed by Banyan. Dkt. No. 71 at 21. However, the supporting declaration from Ms. Greeley states only that when Ms. Greeley raised concerns with patient safety at Banyan's treatment center in Delaware, Mr. Gamaitoni told her that "there was Rep that was let go who was upset acting irrational and rumors were flying." Dkt. No. 72 Exh. 21. Even if Ms. Greeley may have believed that Mr. Bardell was the "Rep" referred to by Mr. Gamaitoni, it is undisputed that Mr. Bardell was upset with Banyan, and whether Mr. Bardell was acting rationally is plainly a subjective opinion.[7]

### 2. *Ms. Moyer's Statements to the Case Management Team*

Any statement by Ms. Moyer that Mr. Bardell had "gone crazy" is similarly a statement of opinion that cannot be objectively verified. On its face, such a statement "cannot reasonably be interpreted as stating actual facts" because there is too much room for subjective disagreement on what constitutes "crazy" behavior. *See Cousins*, 283 A.3d at 1157–58 (explaining that calling the

---

[7] Mr. Bardell argues that Banyan's work culture and other Banyan employees' perceptions of the same issues at Banyan demonstrates that Mr. Bardell was not acting erratically or delusionally. *See* Dkt. No. 72 at 13–14. The disputed facts regarding Banyan's work culture and employees' perception of issues at Banyan may provide context to Mr. Bardell's tone and accusations regarding Banyan. Even accepting them as true, however, it is still clear that Mr. Gamaitoni was expressing an opinion based on the events of December 2021.

defendant's lawsuit "shockingly racist" is an expression of opinion because what is considered "racist" is subjective). As the defendants point out, several other courts have come to the same conclusion on similar statements. *See, e.g., Shaw v. Palmer*, 197 S.W.3d 854, 857–58 (Tex. App. 2006) ("The use of the term crazy does not, in its common usage, convey a verifiable fact, but is by its nature indefinite and ambiguous"); *Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) (concluding statements that the plaintiff was "Looney Tunes," "crazy," and "nuts" were statements of opinion protected by the First Amendment); *Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 916 (N.D. Ill. 2001) (assertion that plaintiff was "unstable" is unverifiable and, therefore, unactionable). Moreover, while Mr. Bardell argues that his employers could have objectively verified the statement in December 2021 by submitting him to a fitness-for-duty examination, the relevant question is whether a finder of fact can now make an objective determination as to the truth of the statement. Given that what constitutes "crazy" behavior is inherently subjective, that is not possible.

By contrast, a statement by Ms. Moyer that Mr. Bardell had "relapsed" is a provable statement of fact. Unlike the question whether Mr. Bardell had "gone crazy," the question whether Mr. Bardell relapsed has an objective answer. Despite the defendants' assertion to the contrary, it is well within the ability of a jury to weigh the evidence from both sides on this question and assess the testimony of the relevant witnesses to determine whether the statement was true.[8]

The defendants argue that the record at most indicates that Ms. Moyer would have been relaying any statement regarding Mr. Bardell during a meeting with the case management team

---

[8] The defendants cite *Agar v. Judy,* 151 A.3d 456 (Del. Ch. 2017) in support of their position that what constitutes a relapse requires the jury to make a "personal moral judgment." In that case, the Chancery Court determined that the term "looting" in the corporate context had several meanings and would involve a personal judgment. *Id.* at 482. The term "relapse" is not a similarly subjective term subject to multiple interpretations.

who had already witnessed Mr. Bardell's actions at the Milford site. Dkt. No. 59 at 13. However, whether the case management team was aware of the underlying events is in dispute. First, it is not evident from the record whether the entirety of the case management team was aware that Mr. Bardell arrived at the Milford site unannounced. And while the Milford site was not Mr. Bardell's primary workplace, Mr. Bardell states that he visited the site for work-related reasons once a week, Dkt. No. 72 ¶ 10, so it is not apparent that Mr. Bardell's presence there would have been regarded as unusual. Second, Mr. Bardell disputes that anyone outside of Mr. Schmidt's office heard his accusations regarding Banyan's treatment of Highmark patients. Because it is not evident that the case management team was aware of the events of December 8, 2021, and there is no evidence that Ms. Moyer relayed the facts accompanying her statement that Mr. Bardell had relapsed, genuine issues of material fact preclude summary judgment with regard to Ms. Moyer's statements.

### 3.  Any Statement by Mr. Collins

As discussed, it is not evident what statements, if any, Mr. Collins made regarding Mr. Bardell's mental health and whether Mr. Bardell had relapsed. Mr. Bardell alleges that Mr. Collins made statements to other Banyan employees that Mr. Bardell had relapsed or "gone crazy." Dkt. No. 72 ¶ 17. The defendants submitted a declaration from Mr. Collins, but that declaration did not address whether Mr. Collins made any statements to other employees regarding the events at the Milford site on December 8, 2021. Dkt. No. 59 Exh. 7. A disputed factual issue therefore remains as to whether Mr. Collins made defamatory statements. However, for the reasons discussed above, any statement that Mr. Bardell had gone crazy is a protected statement of opinion. Only statements of fact, in particular that Mr. Bardell had relapsed, will support Mr. Bardell's defamation case.

### ii. Privilege

Under Delaware law, there is a conditional privilege for otherwise defamatory statements if those statements were made "with respect to the character or qualifications of an employee or former employee" and "made to any person who has a legitimate interest in the subject matter." *See Burr v. Atl. Aviation Corp.*, 332 A.2d 154, 155 (Del. Super. Ct. 1974), *rev'd on other grounds*, 348 A.2d 179 (Del. 1975); *see also Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982).

Once the defendant has established the conditional privilege as an affirmative defense, the plaintiff then has the burden to show that the privilege was waived by showing "it was abused 1) by excessive or improper publication, 2) by the use of the occasion for a purpose not embraced within the privilege, or 3) by making a statement which the speaker knows is false." *Meades v. Wilmington Hous. Auth.*, No. Civ.A. 03C-05-013, 2006 WL 1174005, at *3 (Del. Super. Ct. Apr. 28, 2006), *aff'd*, 918 A.2d 339 (Del. 2006). "In the alternative, the plaintiff must prove the statement was not made in good faith, or was made with actual malice or intent to harm the plaintiff." *Id.* Whether a conditional privilege has been abused is ordinarily a question for the factfinder. *See Meades v. Wilmington Hous. Auth.*, 875 A.2d 632 (Table), 2005 WL 1131112, at *2 (Del. 2005); *see also Burr*, 348 A.2d at 181 ("The question whether a conditional privilege has been abused by malice or intent to harm ordinarily is a factual question for the jury").

The defendants argue that the alleged defamatory statements fall within the conditional privilege for statements related to an employee's qualifications. They argue that Mr. Gamaitoni made the statements regarding Mr. Bardell's mental health in a discussion of how to respond to Mr. Bardell's actions in December 2021 and, specifically, whether to suspend or terminate Mr. Bardell. They argue that any statements made by Ms. Moyer were similarly made to employees with a legitimate interest in the subject matter because they were made to members of the case

assessment team who had witnessed Mr. Bardell's "outburst" and needed to know what had transpired in order to continue their job duties. Dkt. No. 59 at 12–13. Moreover, the defendants argue that Mr. Bardell cannot establish that the conditional privilege was abused because he cannot show that the statement either was excessively published or was made with knowing falsity or actual malice. *Id.* at 13–14.

Mr. Bardell first responds that the defendants waived the defense of conditional privilege by failing to raise it in the answer to his amended complaint. Dkt. No. 46. While an affirmative defense "should be asserted in the appropriate responsive pleading[,] . . . the failure to do so does not automatically result in a waiver." *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001). In particular, an immunity defense "is not necessarily waived by a defendant who fails to raise it until the summary judgment stage." *Id.* at 210. Rather, the Third Circuit has instructed district courts to exercise their discretion to determine whether defendants have exercised "a reasonable modicum of diligence" in raising their defense and whether the plaintiff has been prejudiced by the delay. *Id; see also Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006) ("affirmative defenses can be raised by motion, at any time (even after trial), if plaintiffs suffer no prejudice.").

Applying that standard, I conclude that the immunity defense was not waived because the defendants raised the immunity defense at a "pragmatically sufficient time" to permit Mr. Bardell to respond in his brief on summary judgment. *See Weyerhaeuser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 737 (D. Del. 2016) (collecting cases), *aff'd*, 721 F. App'x 186 (3d Cir. 2018). While Mr. Bardell argues that he was prejudiced because he could not conduct relevant discovery, he does not point to any additional discovery he would have taken if the privilege defense had been raised earlier. Moreover, the court granted Mr. Bardell's request for additional time to respond to

15

the defendants' summary judgment motion on the ground that they raised a new defense, thus alleviating any potential prejudice from the belatedly asserted defense.  Dkt. No. 69.

Mr. Bardell next argues that even if the court finds that the defendants would otherwise be entitled to a conditional privilege, that privilege was forfeited because (1) information regarding Mr. Bardell's mental health was confidential under the ADA; (2) the privilege was abused by publication to non-employees and employees whose interest in Mr. Bardell's mental health was not relevant to their jobs; (3) the statements were in fact false; and (4) the statements were made with reckless disregard for their truth because no one verified the truth of the statements by conducting a urine test or fitness-for-duty examination.

Because I have determined that Mr. Gamaitoni's statements were statements of opinion, the remaining questions are (1) whether any statement by Ms. Moyer or Mr. Collins that Mr. Bardell had relapsed is subject to the conditional privilege and (2) whether that privilege was abused.[9]  At this stage, the record is not sufficiently developed to answer that question.  As discussed above, it is not clear to which Banyan employees Ms. Moyer made her statements and what those employees witnessed.  It is therefore unclear whether those employees had a legitimate interest in communications regarding Mr. Bardell's condition.

Even if some employees witnessed the relevant events, if Ms. Moyer published her statements to those who did not, then a reasonable jury could find that Ms. Moyer had excessively

---

[9] Several of Mr. Bardell's arguments regarding the abuse of the conditional privilege relate only to statements by Mr. Gamaitoni.  First, Mr. Bardell alleges that Mr. Gamaitoni had privileged information regarding Mr. Bardell's mental health based on Mr. Bardell's meeting with Mr. Gamaitoni on December 10, 2021.  That argument does not apply to Ms. Moyer or Mr. Collins. Second, Mr. Bardell alleges, based on Mr. Gamaitoni's statement to Ms. Greeley, that Mr. Gamaitoni published his statement outside the workplace.  As addressed above, however, the statement Mr. Gamaitoni made to Ms. Greeley is not actionable.  There is no allegation that Ms. Moyer or Mr. Collins made a defamatory statement to individuals outside of Banyan.

published the relevant statement. *See* Restatement (Second) of Torts § 604 ("the fact that there is publication to improper persons may justify the conclusion, as a matter of fact, that the defendant has not acted for the purpose for which the privilege is given, but by reason of some other motive not within the privilege. In that event, the entire privilege is abused, even though there is publication to some persons who would otherwise be proper.") (citations omitted). Whether the privilege was abused by excessive publication is a question for the jury. *See Garziano v. E.I. Du Pont De Nemours & Co.*, 818 F.2d 380, 394 (5th Cir. 1987).

The defendants argue that Mr. Bardell cannot establish excessive communication because the alleged statement was disseminated only between coworkers. *See* Dkt. No. 82 at 8. However, the proper standard is whether the communication was made to those with a "legitimate interest in the subject matter." *See Burr,* 332 A.2d at 155. In the cases cited by the defendants, there was no allegation that the statement was published to employees without a legitimate interest in the subject. *See Battista*, 454 A.2d at 291 (communications were only made by those acting in the scope of their employment); *Simpler v. El Paso Polyolefins Co.*, No. 83C-JL-18, 1986 WL 4575, at *1–2 (Del. Super. Ct. Apr. 3, 1986) (communication to a contractor's employer regarding a contractor's job performance from the entity that received the services was not excessively published); *Stafford v. Air Prod. & Chemicals, Inc.*, No. 84C-JL-85, 1985 WL 189259 (Del. Super. Ct. Sept. 5, 1985) (evidence that an employee's coworkers heard allegedly defamatory statements was not evidence of excessive publication because there was no evidence the employer shared those statements with the coworkers).

Mr. Bardell also asserts that the relevant statements were made with actual malice. Actual malice requires "knowledge that [the statement] was false or made with reckless disregard of whether it was false or not." *Page v. Oath Inc.*, 270 A.3d 833, 844 (Del. 2022). Mr. Bardell argues

that the statements were in fact false but has produced no evidence to suggest that the defendants

knew the statements were false.  His only argument that the statements were made with reckless

disregard for the truth is that Banyan could have subjected him to a urine test or a fitness-for-duty

examination.  However, not conducting a urine test when Mr. Bardell offered to take one does not

rise to the level of "reckless disregard" for the truth as to whether he had relapsed.  Thus, summary

judgment is granted to the defendants on the issue of actual malice.  Mr. Bardell will be foreclosed

from arguing that the conditional privilege does not apply because the statement was made with

actual malice.

### B.  ADA Claim

#### i.  Mr. Bardell's Burden to Establish a Prima Facie Case of Disparate Treatment under the ADA

"In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff

must show (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified

to perform the essential functions of the job, with or without reasonable accommodations by the

employer; and (3) he has suffered an otherwise adverse employment decision as a result of

discrimination."  *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

The defendants argue that Mr. Bardell cannot establish a prima facie case of disparate

treatment under the ADA because he cannot establish that he was "regarded as" having a disability

by his employers.  They assert that Mr. Bardell has not adduced any evidence that his employers

regarded him as having a disability that affected his daily life activities.

I addressed the defendants' first argument in my order denying the defendants' motion to

dismiss.  *See* Dkt. No. 21 at 5–7.  I explained that the 2012 amendments to the ADA established

that the test for whether an employee is regarded as having a disability is "whether the employer

perceived [the employee] as impaired, whether or not the [perceived] impairment limits or is

perceived to limit a major life activity." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (citing 42 U.S.C. § 12102(3)(A) (cleaned up)). I noted that the defendants had erred in their briefing on the motion to dismiss by relying exclusively on pre-2012 cases. The defendants, however, have continued to assert the wrong standard for being "regarded as" having a disability, based entirely on pre-2012 case law. Their briefing is thus focused on the wrong question.

In my order on the defendants' motion to dismiss, I found that Mr. Bardell had sufficiently alleged discrimination under the ADA by alleging that his employers knew about his addiction and perceived him to be going through a relapse. Dkt. No. 21 at 7. After discovery, both allegations are undisputed. Thus, for the purposes of this motion, Mr. Bardell has met his burden to establish that he is a disabled person within the meaning of the ADA. Mr. Bardell is not required to show that his employers perceived his addiction to limit a major life activity.

The defendants additionally contend that Bardell admitted that he was not in fact regarded as having relapsed, and that his argument is that the reference to relapse was a pretext for firing him because of his "whistleblower" status. Dkt. No. 59 at 7, 15 (citing Dkt. No. 59 Exh. 6 293:2–295:16). That assertion overstates Mr. Bardell's deposition testimony. In his deposition, Mr. Bardell stated at one point that "I don't think they believed for a second that I relapsed. I was very transparent in regards to the medical marijuana. I think that they used that as a ploy to discredit me." Dkt. No. 59 Exh. 6 at 294:4–8. However, he followed up that response by saying "I do believe that I was terminated because I was a drug and alcohol addict." *Id.* at 294:15–16. He later reiterated his belief that it was a combination of his whistleblower status and his addiction that led to his termination. *Id.* at 294:24–295:9. The defendants are free to present Mr. Bardell's deposition testimony or to cross-examine him on those statements, but those statements alone do not amount to a concession that he does not believe he was regarded as having a disability.

The defendants next argue that even if Mr. Bardell's employers regarded him as having relapsed, he would not be protected under the ADA because the ADA does not protect a person from termination for addiction-related misconduct or active use of intoxicating substances. *See Salley v. Cir. City Stores, Inc.,* 160 F.3d 977, 981 (3d Cir. 1998). While the defendants are correct that the ADA does not protect individuals who are currently using illegal drugs, *id.*, the ADA explicitly protects an individual who is "erroneously regarded as engaged in [illegal drug use], but is not engaging in such use." 42 U.S.C. § 12114(b)(3); *see also* UNITED STATES COMM'N ON CIVIL RIGHTS, SHARING THE DREAM: IS THE ADA ACCOMMODATING ALL? 56 (2000).[10]

For the first time in their reply brief, the defendants additionally raise the argument that Mr. Bardell cannot establish that he was regarded as having a disability because transient mental health episodes are not a protected disability under the ADA. *See* Dkt. No. 82 at 9–10 (citing *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1049 (5th Cir. 1998); *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996); *Michalesko v. Borough*, 658 F. App'x 105, 106–07 (3d Cir. 2016); *Koci v. Central City Optical Co.*, 69 F. Supp. 3d 483 (E.D. Pa. 2014). I addressed this argument in my order on the defendants' first motion to dismiss: the impairment in this case is not Mr. Bardell's

---

[10] It is undisputed that Mr. Bardell was using medical marijuana prior to the relevant events. See Dkt. No. 72 ¶ 4; Dkt. No. 71 at 14–15; Dkt. No. 59 at 8. Several courts have determined that the use of medical marijuana in states that have legalized such use still constitutes the use of an illegal drug under the ADA and that such use is not subject to the physician-supervised use of a drug exception because the ADA defines illegal drug use in reference to the Controlled Substances Act and marijuana remains on Schedule 1 of the Controlled Substances Act. *See Skoric v. Marble Valley Regional Transit District et al.,* No. 2:23-cv-00064, Dkt. No. 31 at 8–9 (D. Vt. Feb. 14, 2024) (collecting cases); *Drift v. Diamond Materials, LLC*, No. CV-227503, 2023 WL 5321061, at *3 (D.N.J. Aug. 18, 2023).

The ADA specifies that "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, *when the covered entity acts on the basis of such use.*" 42 U.S.C. § 12114(a). In this case, neither party asserts that Mr. Bardell was terminated based on his use of marijuana. In his deposition, Mr. Bardell testified that Mr. Gamaitoni told Mr. Bardell that the use of a medical marijuana card was fine. Dkt. No. 59 Exh. 6 at 81:6–11. The defendants assert that they fired Mr. Bardell based on his erratic behavior, not because he used marijuana.

relapse, but rather his addiction. *See* Dkt. No. 21 at 7. No one disputes that Mr. Bardell's addiction well exceeded the six-month requirement for perceived disabilities under the ADA. *See Koci*, 69 F. Supp. 3d at 486 ("a plaintiff may not allege perceived disability based on impairments that are transitory and minor, that is, lasting six months or less") (citing 42 U.S.C. § 12102(3)(B)).

In their summary judgment motion, the defendants do not address the other two requirements for a prima facie case of disparate treatment under the ADA. At this stage, Mr. Bardell has at least raised a factual dispute as to whether he was qualified to perform the essential functions of his job and suffered an adverse employment decision based on discrimination. Mr. Bardell has adduced evidence that he was qualified to perform his job based on his education and experience, his receiving a raise after six months of employment, and his positive performance reviews. Dkt. No. 72 ¶¶ 6–7; Dkt. No. 72 Exh. 3 at BANYAN000131–BANYAN000133. Mr. Bardell argues that he suffered adverse employment decisions, including suspension and termination, because his employers assumed that he had relapsed based on his addiction, despite his qualifications.

### ii. Whether the defendants have conclusively established a legitimate, non-discriminatory reason for Mr. Bardell's termination

The defendants argue that even if Mr. Bardell can establish that he was regarded as having a disability, they have shown that they had a legitimate, non-discriminatory reason for terminating Mr. Bardell. Dkt. No. 59 at 15–17. The defendants point to several undisputed events as the basis for Mr. Bardell's termination: (1) Mr. Bardell's unannounced visit to the Milford site on December 8, 2021, to confront employees about perceived issues in a manner that made the employees uncomfortable; (2) Mr. Gamaitoni's meeting with Mr. Bardell to address his mental wellbeing; (3) Mr. Bardell's use of a company credit card to book a flight to Florida, rent a car, and reserve a

hotel without authorization; and (4) Mr. Bardell's unannounced attempt on December 14, 2021, to attend a meeting in Florida to which he had not been invited.

After a defendant in an ADA action has established a legitimate reason for an adverse employment action, the plaintiff on a motion for summary judgment must adduce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The defendants argue that Mr. Bardell has not met that burden.

Mr. Bardell responds that he has met that burden because there is significant evidence that the defendants' reason is "simply pretext" and that mental health (i.e., his addiction) was a "significant and repeated part of conversations" regarding his employment. Dkt. No. 72 at 25–26. In arguing that the defendants' articulated reasons for firing him are not believable, Mr. Bardell points to the following: (1) text messages from November 2021 by Mr. Gamaitoni and Mr. Cortez stating that Mr. Bardell is "a legend," Dkt. No. 72 Exh. 5 at 1–2; (2) text messages between Mr. Bardell and a former Banyan employee discussing how other employees had relapsed yet kept their jobs, Dkt. No. 59 Exh. 4 at 16; (3) inconsistencies in how Banyan discussed Mr. Bardell's termination, including that it was because Mr. Bardell did not share the goals of Banyan, his behavior at the Banyan sites, his threat of violence on Facebook, and his relapse or mental health episode; (4) the fact that Ms. Lloyd did not call the police to complain about what she described as the Banyan Delaware office being trashed until December 15, 2021, after Mr. Bardell had been suspended, rather than on December 11, 2021, when she would have seen the office; (5) that the police report from that call is inconsistent with Ms. Lloyd's affidavit because it refers to writing on the white board but does not mention urine in a trash can or a broken toilet, Dkt. No. 72 Exh.

F; (6) inaccuracies in Banyan's investigation into Mr. Bardell's conduct after his termination, Dkt. No. 71 Exh. 26; (7) that the company's handbook required employees to communicate any violation of company policy regarding patient issues, Dkt. No. 71 Exh. 3; (8) that Mr. Bardell was never made aware of complaints regarding his communications with community partners of the sort alleged in Mr. Bozza's declaration, Dkt. No. 59 Exh. 2 ¶ 27; and (9) leadership's discriminatory attitudes in other contexts, Dkt. No. 71 Exh. 5.

Mr. Bardell's burden in disputing the defendants' reasons for firing him is to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. Although Mr. Bardell points to many pieces of evidence, much of the evidence he highlights does not bear on the question of whether the defendants' proffered reasons for their actions is plausible.

Mr. Bardell contends that the defendants fabricated the reasons for his termination after the fact. In support, he refers to the fact that Ms. Lloyd called the police on December 15, rather than on December 10 when the office was allegedly trashed, and that the police report does not refer to urine in a trash can or a broken toilet, both of which Ms. Lloyd included in her affidavit. Dkt. No. 72 Exh. F. However, the defendants ultimately did not list the events of December 10, 2021, at the Banyan office as a reason for Mr. Bardell's termination. Instead, they focused on his accusations at the Milford site and his behavior in Florida. A plaintiff must submit evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." *Fuentes*, 32 F.3d at 762. Even if Mr. Bardell cast doubt on Ms. Lloyd's accounting of the events of December 10, 2021, that

provides only modest support for his contention that the reasons the company gave for his firing were pretextual.

Mr. Bardell also argues that there are inaccuracies in a report done after he was terminated and that the investigation was "more of an investigation into Mr. Bardell, rather than it was into his allegations [regarding patient safety]." Dkt. No. 72 Exh. 26. Mr. Bardell does not state which inaccuracies in the report, if any, undermine the proffered reasons for his termination. To the extent the report discussed Mr. Bardell, rather than the allegations he made, that is not inconsistent with the proffered reasons for Mr. Bardell's termination (i.e., his behavior in December 2021).

Mr. Bardell has adduced evidence of his supervisors' praise prior to the events of December 2021 and argues that after such praise it would be irrational to fire him after one instance of poor behavior. However, his positive performance reviews prior to the events of December 2021 do not necessarily undermine the proffered reasons for his suspension and subsequent termination, i.e., that his behavior in December 2021 was erratic and unprofessional.

Mr. Bardell points to additional evidence that he considers inconsistent with the proffered reasons for his suspension and termination. But that evidence does also fails to cast doubt on the legitimate stated reasons for Mr. Bardell's termination. First, the multiple reasons given for why Mr. Bardell was terminated (i.e., that he did not share the goals of Banyan, his behavior in December 2021, his threat of violence on Facebook, and a relapse of a mental health episode) are not inconsistent with the reason that the defendants give for his termination: they are entirely consistent with the defendants' position that they terminated Mr. Bardell's employment based on erratic and unprofessional behavior.

Second, Mr. Bardell argues that Mr. Bozza's declaration is misleading because Mr. Bardell was never previously put on notice that there were complaints regarding his interactions or

communications with community partners. The paragraph of Mr. Bozza's declaration that Mr. Bardell refers to states that the company's leadership agreed that "given Mr. Bardell's erratic and disruptive behavior, as well as his disparaging comments and remarks about Banyan in the community, Mr. Bardell could not continue to be a representative of Banyan." Dkt. No. 59 Exh. 2 ¶ 27. In that statement, Mr. Bozza was not suggesting that the company leadership had received complaints about Mr. Bardell, but rather that Mr. Bardell's complaints about Banyan to Delaware's recovery community led the company to conclude that Mr. Bardell should no longer represent Banyan.

The remaining evidence Mr. Bardell points to does not clearly bear on the relevant question. First, even if it is true that some employees kept their jobs after relapsing, it is not clear why that would show that Mr. Bardell was discriminated against based on a disability. Second, the fact that the employee handbook required Mr. Bardell to communicate violations of company policy similarly does not bear on the question of improper motive. It may be true that Mr. Bardell was in an impossible situation in that he had to report what he perceived as patient safety issues, yet he was fired in part for making "weighty accusations" against Banyan. But that does not address whether the defendants took adverse actions against Mr. Bardell because of a perceived disability.

Third, Mr. Bardell's contention that the company leadership had discriminatory views against people with liberal views or based on gender identity, even if true, does not have any relevance to the legitimacy of their reasons for Mr. Bardell's termination or suggest a pattern of discrimination against people with addiction issues.

Finally, Mr. Bardell argues in his response that the evidence now shows that he was discriminated against not only based on his addiction, but for a perceived mental illness as well.

Dkt. No. 71 at 15.  However, Mr. Bardell never amended his complaint to allege discrimination based on mental illness, nor does he now allege a mental health disability apart from his addiction.[11]  Any clam that Mr. Bardell was discriminated against for a mental illness other than addiction is thus foreclosed at this stage.

With all that said, the evidence that Banyan officials believed (or said they believed) that Mr. Bardell had "relapsed" and that he was fired shortly thereafter, is some evidence of a nexus between his disability and his termination.  A finder of fact could find that Mr. Bardell was fired because of his erratic conduct or his criticisms of Banyan's treatment of patients.  However, given the several references, by Mr. Gamaitoni and others, to Mr. Bardell's having "relapsed," a finder of fact could also conclude that Mr. Bardell's disability—and more particularly, the Banyan officials' perception of his disability—played a significant role in the decision to fire him.  That issue raises a question of fact that Mr. Bardell is entitled to have a jury decide.

It is important to note two points:  First, in order to prevail, Mr. Bardell need not show that his disability was the sole cause of his termination; it is enough if Mr. Bardell can show that his disability was a  "motivating factor" for his termination, even if there were other contributing causes for his termination.  *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) ("the ADA does not require sole causation. The proper causation standard under the ADA is a motivating factor test."); *Parker v. Columbia Pictures Indus*., 204 F.3d 326 (2d Cir. 2000) (same); *Dismore v. Seaford Sch. Dist.*, 532 F. Supp. 2d 656, 662 (D. Del. 2008).  Second, as noted above, if it could be shown that Mr. Bardell had in fact relapsed and was fired for that reason, he would not be able

---

[11]  Mr. Bardell argues that addiction is a mental health disorder, Dkt. No. 71 at 15, and he notes that Mr. Gamaitoni and Ms. Lloyd "expressed concern with Bardell's mental health."  *Id.,* quoting Dkt. No. 62 at 4; *see also* Dkt. No. 59 at 4.  Those statements fall far short of an allegation of discrimination based on a mental health disability, separate from the alleged discrimination based on the alleged disability of addiction.

to prevail on his ADA claim, as the definition of a "qualified individual with a disability" under the ADA does not include an individual who is currently engaging in the illegal use of drugs. Nor does the ADA protect individuals engaging in substance-abuse related misconduct. *Salley*, 160 F.3d at 980 n.[12] Importantly, however, the ADA does protect individuals who have used illegal drugs in the past but are no longer using illegal drugs, as well as individuals who are erroneously regarded as using drugs when they are not. *See Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002); 42 U.S.C. §§ 12111(6), 12114.

For the foregoing reasons, summary judgment is denied to the defendants as to Mr. Bardell's disparate treatment claim.

## IV. Conclusion

In summary, the court's rulings are as follows:

1. The defendants' motion for summary judgment on defamation is granted as it relates to any statement that Mr. Bardell had "gone crazy" and the statement by Mr. Gamaitoni to Banyan leadership. The motion is denied as it relates to statements by Ms. Moyer and Mr. Collins that Mr. Bardell had relapsed.

2. The defendants' motion for summary judgment on the ADA claim is denied.

\* \* \*

The parties have filed all briefing on these motions and the supporting declarations under seal. Out of an abundance of caution, I have filed this order under seal. Within three days, the

---

[12] The defendants raise a related argument in their reply brief. Dkt. No. 82 at 10. They cite a Fifth Circuit case for the proposition that the "the ADA does not insulate emotional or violent outbursts blamed on an impairment." *See Hamilton*, 136 F.3d at 1052. While that is true, the question whether Mr. Bardell was fired primarily because his employers assumed that he was an addict who had relapsed or because he acted unprofessionally at the Milford site is a question of fact for a jury. Unlike in the *Hamilton* case, here the defendants have admitted that Mr. Bardell's disability (i.e., his alleged relapse related to his addiction issues) was specifically part of a discussion regarding Mr. Bardell's termination.

parties are directed to advise the court by jointly submitted letter if there are any portions of this order that should remain under seal and, if so, to explain why.  An unsealed version of this order will be docketed after counsel's letter is received.

IT IS SO ORDRED.

SIGNED this 17th day of July, 2024.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE