IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RALPH WILLIAM BARDELL, § § *Plaintiff*, § § v. § § BANYAN DELAWARE, LLC, and § BANYAN TREATMENT CENTER, LLC, § § *Defendants*. § | Civil Action No. 23-148-WCB |

## MEMORANDUM OPINION AND ORDER

After two and a half days of trial, the jury returned a verdict against Defendants Banyan Delaware, LLC ("Banyan Delaware") and Banyan Treatment Center, LLC ("Banyan") on *pro se* Plaintiff Ralph William Bardell's defamation claim and awarded him $100,000 in compensatory damages. Dkt. No. 110 at 3–4. The defendants filed a renewed motion for judgment as a matter of law. Dkt. No. 114. For the reasons explained below, the motion is denied.

I.  BACKGROUND

Banyan is an organization that operates addiction treatment centers in multiple states. *See* TD1 at 61:10–25.[1] Banyan Delaware operates Banyan treatment centers in the state of Delaware. *See id*. Mr. Bardell worked for Banyan Delaware from May 26, 2020, to December 16, 2021—first as a Business Development Representative and later as the Director of Business Development. Doc. 92 at 7–8 ("Uncontested Facts"). Mr. Bardell's supervisor during his employment at Banyan Delaware was Josh Gamaitoni. *Id*. at 7.

---

[1] Trial transcripts can be found at docket entries 123 through 125. TD1 stands for Trial Day 1, corresponding to Dkt. No. 123.

Mr. Bardell testified at trial that he is a "recovering alcoholic and drug addict." TD1 at 58:13. After beginning his recovery in 2004, Mr. Bardell developed a "desire to help others struggling from addiction." See id. at 58:13–21. Mr. Bardell acknowledged that he experienced a three-month relapse at the end of 2018. See id. at 112:12–15.

On December 14, 2021, a case manager at Banyan Delaware, Caitlin Amodei, called Mr. Bardell while he was in Florida and "told [him] that it was circulating around staff that [he] had relapsed." See id. at 86:15–19 (Mr. Bardell's testimony about the phone call); id. at 147:5–19 (Ms. Amodei's testimony about calling Mr. Bardell and telling him about the "rumors" that were circulating). Ms. Amodei testified at trial about a meeting involving several case managers and her supervisor, Tina Moyer, during which Ms. Moyer said Mr. Bardell "was no longer an employee at Banyan effective immediately." See id. at 150:3–18. According to Ms. Amodei, another employee said he hoped Mr. Bardell was "okay," to which Ms. Moyer replied that "they were really concerned about [Mr. Bardell] and . . . were pretty sure he had relapsed." See id. at 150:22–151:2. Theresa Anderson, a therapist at Banyan Delaware at the time, also testified about being "called into a meeting" alongside other employees, where Ms. Moyer and another supervisor were present and "the gist of [the communication] was that Bill Bardell is no longer employed with us because he has relapsed." See id. at 183:8–184:16.

Mr. Bardell testified that "[p]rior to [his] termination, [he] was not suffering from any significant mental illness and was confidently maintaining [his] sobriety." Id. at 95:3–5. After he became aware of the rumors of his relapse, however, he started to experience "panic attacks, anxiety, and paranoia." See id. at 96:12–15. And when Mr. Bardell attended a charity golf event at a local treatment center in the spring of 2022, he "felt largely avoided" and found it "very emotionally distressing to think a portion of Delaware's recovery community and addiction field

2

thought [he] had relapsed." *See id*. at 97:7–11. Mr. Bardell is "currently prescribed medication for chronic PTSD to relieve [his] symptoms of anxiety and panic along with a psych med for major depression," which medication he did not need "prior to [his] termination or prior to learning that these individuals heard [he] relapsed." *Id*. at 101:8–13. Mr. Bardell also testified that he "feel[s] like [his] character has been entirely assassinated, which makes [his] anxiety feel overwhelming when [he] consider[s] reentering a workplace." *Id*. at 101:22–24. Mr. Bardell feels he "no longer [has] credibility" and that no "recovery organization . . . would want to pay $100,000 a year to someone who they think keeps relapsing." *See id*. at 102:1–13; *id*. at 97:17–18 (Mr. Bardell's testimony that false rumors of his relapse "greatly undermined [his] credibility as a professional within the recovery field").

On January 3, 2023, Mr. Bardell filed an action against Banyan and Banyan Delaware in Delaware state court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *See* Dkt. No. 1-1. After the case was removed to this court based on federal question jurisdiction, *see* Dkt. No. 1 at 3, Mr. Bardell filed an amended complaint, Dkt. No. 28. The amended complaint alleged defamation as well as disparate treatment under the ADA and added Mr. Gamaitoni as a defendant. *See id*. Mr. Gamaitoni was dismissed after summary judgment was granted "on defamation as it relates to the alleged defamatory statement of Mr. Gamaitoni to Banyan leadership." Dkt. No. 90. The case proceeded to trial against Banyan and Banyan Delaware on Mr. Bardell's ADA disparate treatment claim and defamation claim.

The trial began on July 31, 2024. On the second day of trial, the defendants moved for judgment as a matter of law under Rule 50(a). *See* TD2 at 350:17–355:21 (the defendants' oral 50(a) motion); Dkt. No. 118 (the defendants' written Rule 50(a) motion). The court deferred ruling on the 50(a) motion. *See* TD2 at 354:22–355:2.

On August 2, 2024, the jury returned a verdict in favor of the defendants on Mr. Bardell's disparate treatment claim under the ADA. *See* Dkt. No. 110 at 2. The jury, however, found that "Defendants Banyan Delaware, LLC, and Banyan Treatment Center, LLC, defame[d] Mr. Bardell through statements that he had 'relapsed.'" *Id*. at 3. The jury awarded $100,000 in compensatory damages for Mr. Bardell's defamation claim. *Id*. at 4. The jury did not award any punitive damages for Mr. Bardell's defamation claim. *Id*. (finding that Mr. Bardell did not prove "that he is entitled to punitive damages . . . based on his defamation claim").

## II. LEGAL STANDARD

Judgment as a matter of law under Federal Rule of Civil Procedure 50(b) may be granted "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (quoting *Powell v. J.T. Posey Co.*, 766 F.2d 131, 133–4 (3d Cir. 1985)) (internal quotation marks omitted). In making that determination, the "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). In addition, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*. at 151.

## III. DISCUSSION

### A. Defamation *Per Se*

The defendants argue that they are entitled to judgment as a matter of law because Mr. Bardell failed to establish defamation *per se*, or special damages in the absence of defamation

*per se*. According to the defendants, Mr. Bardell cannot recover without establishing defamation *per se* or special damages, because his defamation claim is based on an oral statement that he "relapsed." *See* Dkt. No. 115 at 5–9. The defendants assert that Mr. Bardell failed to establish that the statement falls into a cognizable category of defamation *per se* under Delaware law. *Id*. at 5. The defendants further assert that the failure to establish defamation *per se* required Mr. Bardell to establish special damages, which are defined as "the loss of something having economic or pecuniary value." *Id*. at 8 (quoting *Preston Hollow Cap. LLC v. Nuveen LLC*, No. N19C-10-107 MMJ CCLD, 2022 WL 2276599, at *3 (Del. Super. Ct., June 14, 2022)). According to the defendants, Mr. Bardell failed to establish special damages. *Id.*

As a preliminary matter, the jury was not instructed that Mr. Bardell had to prove defamation *per se* or special damages to recover for his defamation claim. Rather, the jury was instructed that "[t]o prove defamation, Mr. Bardell must prove each of the following elements by a preponderance of the evidence: (1) that the communication was defamatory; (2) that it was communicated to one or more third persons; (3) that the communication referred to Mr. Bardell; (4) that the third person or persons understood the communication's defamatory character; and (5) that the communication caused an injury to Mr. Bardell." Dkt. No. 106 at 8. The jury was also instructed that it "should award Mr. Bardell damages that will fairly and adequately compensate him for any injury he has suffered as a result [of defamation], including any injury to his reputation and standing in the community, and any special injury such as any monetary loss suffered by Mr. Bardell." *Id*. at 11. The instructions thus made no mention of defamation *per se*, let alone cognizable categories of defamation *per se* under Delaware law. The instructions also did not limit Mr. Bardell's damages to special damages in the event that he did not establish defamation *per se*.

5

To the extent that the defendants suggest the jury instructions were erroneous, that challenge is waived. The defendants not only failed to object to the final jury instructions at trial but also invited any error by proposing instructions that are substantively the same as the ones that were given.[2] *See* TD1 at 221:22–222:13 (the defendants' lack of objections to final jury instructions); Dkt. No. 87 (the defendants' proposed final jury instructions). Although the "court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights," Fed. R. Civ. P. 51(d)(2), that standard does not apply where the defendants proposed the jury instructions at issue and thus invited any error. *See United States v. Holmes*, 607 F.3d 332, 335 (3d Cir. 2010) ("Because [the defendant] himself proposed the instruction given by the district court . . . the invited error doctrine prevents him from challenging on appeal the definition that was provided to the jury."); *2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 744 (3d Cir. 2004) (holding that any error in requiring proof by a preponderance of the evidence was "tantamount to invited error" because the defendant "submitted proposed jury instructions that did not include an instruction that entitlement to punitive damages must be established by clear and convincing evidence").

In any event, the defendants' arguments fail on the merits because there was sufficient evidence for the jury to find that the oral statement that Mr. Bardell "relapsed" constituted defamation *per se*. The four categories of defamation *per se* under Delaware law are "statements

---

[2] The defendants asked the court to instruct the jury that "[i]n order to prove defamation, Mr. Bardell must prove: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury." Dkt. No. 87 at 24. The defendants further requested that the court instruct the jury that it "should award Bardell damages that will fairly and adequately compensate him for: (1) any damage to his reputation and standing in the community; (2) any emotional distress, embarrassment, humiliation and mental suffering endured by him, and any physical or bodily harm caused by that suffering; and (3) any special injury such as monetary loss suffered by the plaintiff." *Id*. at 42.

which: (1) malign one in a trade, business or profession, (2) impute a crime, (3) imply that one has a loathsome disease, or (4) impute unchastity to a woman." *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978). "[T]o malign one in a trade, business, or profession would mean to speak critically about someone's job and/or work." *McMahon v. McMahon*, No. S22C-06-022 MHC, 2024 WL 1905462, at *3 (Del. Super. Ct. Apr. 29, 2024). There was sufficient evidence for the jury to find that the statement that Mr. Bardell "relapsed" was one that maligned him in his trade, business, or profession.

According to the defendants, "[t]he statement that Bardell may have relapsed was not 'incompatible' with the exercise of [his] position as a Director of Business Development," and "[q]uite the contrary, being in recovery was demonstrated to be a positive in his position." Dkt. No. 115 at 6. The defendants offer as "demonstrable proof" the fact that Mr. Bardell "was able to obtain significantly improved monetary terms when he joined Banyan after he did, in fact relapse." *Id*. Mr. Bardell, however, responds that the statement that he relapsed "is antithetical to his calling as a professional in the addiction treatment field," "is capable of making him appear hypocritical to those in the addiction treatment field," and "is capable of causing others to question his morals, question his reliability, question his health, question his sanity, question his decision-making, question his strength of character, etc." Dkt. No. 121 at 7.

In support, Mr. Bardell cites the testimony of Kathy Greeley, a peer recovery specialist at Beebe Hospital, who was asked about the impact of information that someone working in the field of addiction treatment had relapsed. *Id*. at 6. Ms. Greeley testified:

> Well, your credibility is your recovery. Your story is your recovery. You're helping people working with this community because you are in recovery, and any time that people think that you have relapsed, you have no credibility. No one knows how sick you are. They don't know what substances you picked up. They don't know how long you've been using. The only thing you have is your credibility, and it's precious. If someone

7

>thinks that you've picked up a drink or a drug, you are no longer healthy. You're no longer safe, so it's extremely impactful.

TD1 at 205:18–206:3. The jury was free to credit Ms. Greeley's testimony—as well as Mr. Bardell's own testimony about his "damaged professional reputation," *see id*. at 102:22–23—and reasonably conclude that a statement that Mr. Bardell relapsed would damage his credibility as a professional in the field of addiction treatment.

Moreover, the defendants' argument that a statement about his relapse "speaks not to his ability to perform his job, but instead to a personal issue," Dkt. No. 122 at 4, ignores the context of Mr. Bardell's job. In *McMahon*, the case the defendants rely on, the plaintiff owned a pest control business, whereas the defamatory statements at issue were statements that the plaintiff was the "type of person to threaten violence against [Defendant] and [Defendant's] family," was "abusive toward [Defendant]," and "did not properly help with or provide care for [the Defendant's husband]," as well as statements "more generally that Plaintiff filed a false police report." 2024 WL 1905462 at *3 (internal quotation marks omitted). The court thus held that "[n]one of the comments Defendant allegedly made have anything to do with Plaintiff's pest control business nor any trade, business, or profession." *Id*. A statement that Mr. Bardell had relapsed, on the other hand, is directly relevant to his trade, business, or profession in addiction treatment, as highlighted by Ms. Greeley's testimony.

Because there was sufficient evidence for the jury to find that Mr. Bardell established a category of defamation *per se*, the court does not address the defendants' argument that "[t]he record provides no evidence of special damages." Dkt. No. 115 at 8. As the defendants also acknowledge, defamation *per se* is "actionable without proof of special damages." *Spence*, 396 A.2d at 970.

8

In sum, the defendants' motion for judgment as a matter of law on the issue of defamation *per se* is denied both because the defendants failed to preserve their argument that Mr. Bardell was required to prove defamation *per se* in order to recover damages, and because the evidence was sufficient to establish defamation *per se* in any event.

### B. Mitigation of Damages

Although the defendants assert in the background section of their opening brief that "Mr. Bardell did not look for new employment following his termination," they made no argument in their opening brief about the mitigation of damages. *See* Dkt. No. 115 at 3. Mr. Bardell, however, asserts in his response brief that "Defendants argue [he] did not try to mitigate his damages" and explains how the argument is "untrue[] and . . . insensitive to the daily struggles to which [he] testified." Dkt. No. 121 at 13. In their reply brief, the defendants argue for the first time that "[i]t is an axiomatic precept of Delaware law that a plaintiff has a duty to mitigate damages" and that "[t]his requirement applies equally to defamation as any other tort." Dkt. No. 122 at 8. The defendants further assert that "the record is devoid of any evidence Bardell performed mitigation," without suggesting what "an effort to mitigate . . . damages arising from . . . [a] defamatory statement" might look like. *Id*. at 9.

The defendants' reply brief is silent as to what portion of the damages awarded to Mr. Bardell for defamation may be attributed to a failure to mitigate and should thus be remitted. *See id*. at 8–9. The defendants thus appear to argue that Mr. Bardell is barred from all recovery because of his failure to mitigate damages. That argument, however, is waived for several reasons. First, "[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice." *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042,

9

1066 (3d Cir. 1991)) (internal quotation marks omitted).  Although Mr. Bardell addressed "the facts presented to the jury regarding mitigation" in his response brief, he did not have an opportunity to respond to the defendants' legal arguments about a plaintiff's duty to mitigate damages for defamation.  *See* Dkt. No. 121 at 14.

Second, "[a] motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion *sufficiently specific* to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1173 (3d Cir. 1993).  The defendants' Rule 50(a) motion argued only that "where a plaintiff brings claims for front and back pay under the ADA the plaintiff has a duty to mitigate his damages by exercising reasonable diligence in his efforts to secure employment."  Dkt. No. 118 at 11 (cleaned up).  The defendants made no argument that Mr. Bardell had a duty to mitigate damages for defamation.  *See id*.

Third, the jury was not instructed that Mr. Bardell had a duty to mitigate damages— whether for his ADA claim or for defamation.  *See* Dkt. No. 106.  The defendants did not object to the absence of instructions regarding mitigation, *see* TD1 at 221:22–222:13, and to the extent that they proposed an instruction on mitigation for defamation damages, they proposed that the "[f]ailure of Bardell to make a reasonable effort to minimize his damages does not prevent all recovery, but it does prevent recovery of the damages that might otherwise have been avoided," *see* Dkt. No. 87 at 44.  That proposed instruction fell short of imposing on Mr. Bardell the burden of proving that he mitigated damages to recover for defamation.  The defendants likewise made no reference to mitigation of damages in their closing argument.  *See* TD3 at 501:25–519:9.

Accordingly, the defendants waived any argument about mitigation of damages, and the court need not consider it as a basis for judgment as a matter of law.

### C. Punitive Damages

Mr. Bardell asserts in a subheading of his response brief that "[the] defendants inaccurately present evidence in their brief, and evidence demonstrates punitive damages are appropriate." Dkt. No. 121 at 18. In the ensuing discussion, Mr. Bardell asserts that "[i]f the jury erred as to damages, it was because they did not award Mr. Bardell enough given the conduct of the defendants." *Id*. at 19. The defendants argue in their reply brief that Mr. Bardell "appears to assert an untimely motion for judgment as a matter of law on the question of punitive damages" and that the "implicit motion on punitive damages is untimely and should be dismissed." Dkt. No. 122 at 10.

The court does not construe those statements in Mr. Bardell's response to constitute an implicit motion or even an argument for judgment as a matter of law. Accordingly, there is no untimely motion to deny.

### D. Prejudgment Interest

When the court entered judgment on August 8, 2024, the court taxed costs against the defendants and stated that prejudgment interest would be awarded to Mr. Bardell "at the legal rate under 6 Del. C. § 2301(a) from January 1, 2022, subject to objection." Dkt. No. 113 at 1. The court directed the parties to submit letter briefs "regarding (1) the amount of prejudgment interest owed by the defendants to the plaintiff, if the parties object to the court's proposal; and (2) the amount of chargeable costs under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920 owed by the defendants to the plaintiffs . . . no later than August 20, 2024." *Id*. at 2. The parties did not submit such letter briefs.

11

Federal courts sitting in diversity "apply state law with respect to prejudgment interest." *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982) (collecting cases)[3]; *see also Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (holding that "[s]tate law governs the award of prejudgment interest in a diversity case," including state-law rules about when prejudgment interest may be awarded) (cleaned up).  This court has supplemental jurisdiction over Mr. Bardell's defamation claim rather than diversity jurisdiction, but Delaware law still applies to issues such as the eligibility for prejudgment interest, as it would in a case in which the court's jurisdiction rests on diversity of citizenship.  *See Felder v. Casey*, 487 U.S. 131, 151 (1988) (applying the *Erie* doctrine to "when a federal court exercises diversity or pendent jurisdiction over state-law claims"); *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) ("It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism.") (collecting cases).

The court previously awarded prejudgment interest *sua sponte* because Delaware case law holds that prejudgment interest is awarded "as a matter of right and not of judicial discretion." *Brandywine Smyrna, Inc. v. Millenium Builders, LLC*, 34 A.3d 482, 485 (Del. 2011) (quoting *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)).  That principle, however, is subject to conditions specified in Section 2301(d) of the Delaware Code:

> In any tort action for compensatory damages in the Superior Court or the Court of Common Pleas seeking monetary relief for bodily injuries, death or property damage, interest shall be added to any final judgment entered for damages awarded, calculated at the rate established in subsection (a) of this section, commencing from the date of injury, provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid

---

[3] The state-law rule at issue in *Jarvis* was Rule 238 of the Pennsylvania Rules of Civil Procedure, which tolled prejudgment interest on the date of the settlement offer if a tort defendant's offer of settlement was not accepted and the plaintiff did not recover more than 125 percent of the offer.  *See* 668 F.2d at 744.

>for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.

*See* 6 Del. C. § 2301(d); *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 427 (Del. 2010) ("The General Assembly enacted 6 Del. C. § 2301(d) to promote earlier settlement of claims by encouraging parties to make fair offers sooner, with the effect of reducing court congestion."). Thus, the court held in *Brandywine* that the plaintiff was "not entitled to the recovery of prejudgment interest, insofar as their claim lies in *tort*," because the plaintiff's "settlement offer of $1,000,000 exceeded the $612,659 damage award awarded by the jury." 34 A.3d at 485. But because Section 2301(d) applies only to tort claims, the court held that the plaintiff was "entitled to recover prejudgment interest for the damages awarded for its breach of *contract* claim," notwithstanding that the same facts regarding the settlement offer applied to the contract award.[4] *Id*.

Because the jury awarded compensatory damages to Mr. Bardell for defamation, a claim that lies in tort, Section 2301(d) applies to any award of prejudgment interest on those damages.[5] There is no indication in the record, however, that Mr. Bardell extended a written settlement demand, let alone a demand for an amount less than $100,000. *See* Dkt. No. 92 at 17–18 (Mr. Bardell's claim of over $10 million in damages in the final pretrial order). Accordingly, the court's previous award of prejudgment interest to Mr. Bardell "at the legal rate under 6 Del. C. § 2301(a)

---

[4] In *Brandywine*, the plaintiff sued the defendant "in contract and tort, alleging that [the defendant] failed to take necessary precautions to protect the premises from water damage." 34 A.3d at 483. The jury, however, "was not asked to specify, in its award, the particular amounts recoverable under the plaintiff's separate tort and contract claims." *Id*. at 485.

[5] Even if Section 2301(d) did not apply, the decision in *Deardoff Associates, Inc. v. Paul*, No. 96C-10-260, 2000 WL 1211077, at *3 (Del. Super. Ct. Apr. 27, 2000), suggests that prejudgment interest is not awarded for defamation.

13

from January 1, 2022, subject to objection" is vacated. Costs remain taxed against the defendants for items listed in 28 U.S.C. § 1920 and Rule 54.1 of the Local Rules of the District of Delaware.

## IV.     CONCLUSION

For the reasons explained above, the defendants' renewed motion for judgment as a matter of law, Dkt. No. 114, is denied. The defendants' Rule 50(a) motion for judgment as a matter of law, Dkt. No. 118, is denied as moot. An amended final judgment will be entered, consistent with the above.

IT IS SO ORDERED.

SIGNED this 11th day of December, 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE